09-3462-cr
United States v. Clark

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

———————

August Term, 2009

(Argued: August 4, 2010        Decided: March 8, 2011)

Docket No. 09-3462-cr

———————

UNITED STATES OF AMERICA,

*Appellant*,

v.

WILL NELSON CLARK,

*Defendant-Appellee*.

———————

Before:

SACK, RAGGI, and LYNCH, *Circuit Judges*.

———————

Appeal from an order of the United States District Court for the Western District of

New York (William M. Skretny, *J.*; Jeremiah J. McCarthy, *M.J.*) suppressing evidence  on

the grounds that (1) probable cause did not support a search warrant for the whole of a multi-

family dwelling; (2) defendant's post-arrest statement was tainted by the invalid warrant; and

(3) the "good faith exception" to the exclusionary rule announced in United States v. Leon,

468 U.S. 897, 922 (1984), did not apply to the facts of the case.  Although the warrant was

defective, the good faith exception does apply so that no suppression of evidence was warranted.

REVERSED and REMANDED.

_____

JOSEPH J. KARASZEWSKI, Assistant United States Attorney, *on behalf of* Kathleen M. Mehltretter, United States Attorney for the Western District of New York, Buffalo, New York, *for Appellant*.

ANGELO MUSITANO, Niagara Falls, New York, *for Defendant-Appellee*.

_____

REENA RAGGI, *Circuit Judge*:

In this case, in which defendant Will Nelson Clark stands indicted in the United States District Court for the Western District of New York (William M. Skretny, *Judge*) on two counts of unlawful possession of cocaine base, the United States appeals from a pre-trial order entered on July 16, 2009, suppressing both physical evidence seized pursuant to a search warrant and defendant's post-arrest statement on the grounds that (1) the warrant to search a multi-family dwelling was not supported by probable cause; (2) defendant's statements were tainted by the unlawful search; and (3) the "good faith exception" to the exclusionary rule announced in United States v. Leon, 468 U.S. 897, 922 (1984), does not apply to the facts of this case. We agree that the search warrant was not adequately supported by probable cause, but we conclude that the good faith exception to the exclusionary rule applies in this case to defeat the motion to suppress. Accordingly, we reverse the challenged suppression order and remand the case for further proceedings

2

consistent with this opinion.

## I.    Background

### A.    The Challenged Search Warrant

On June 10, 2008, detectives with the Niagara Falls Police Department sought and obtained from a city court judge a warrant to search both "the person known as WILL N. CLARK," and the premises at "1015 Fairfield Ave, being a multi family dwelling" for "[c]ocaine and any other controlled substances" as well as a range of physical items indicative of drug dealing. Search Warrant at 1. Although nothing before the issuing judge appears to have indicated the size of the building and whether "multi family" referenced two or twenty distinct residential units, the warrant authorized a search of the entire premises, including "any and all persons present at this location during execution of said search warrant, all rooms, contents of those rooms, including any computers and hard drives of same . . ., hallways, stairways, storage areas, basement, attic areas, closets, any and all locked and secured areas, locked safes or containers and porches to said address." Id.[1]

In support of this expansive warrant, two detectives swore to an affidavit disclosing that an informant of "unknown reliability"[2] had advised police that Clark was selling cocaine

---

[1] While the scope of the warrant might raise concerns as to both persons and place, because no evidence seized from third parties is here at issue, we need only consider whether there was a substantial basis for finding probable cause to search the entire building.

[2] The government reiterates on appeal a point made in the district court: that the informant's reliability was unknown at the time of his first meeting with police, but thereafter was corroborated by the police surveillance and two controlled purchases of drugs discussed in the warrant affidavit.

3

at 1015 Fairfield Avenue, a "multi family dwelling," but only to persons previously known to him. Aff. for Search Warrant ("Warrant Aff.") at 2-3. The informant had also stated that Clark had "full control over 1015 Fairfield Ave." Id. at 2. In further support of the warrant, the detectives swore that in the course of numerous surveillances of the subject premises, police had observed defendant Clark "entering and remaining and exercising control at the residence of 1015 Fairfield Ave." Id. In addition, in May 2008, police supervised two controlled purchases of cocaine by the confidential informant from Clark. On the first occasion, after confirming that the informant had no drugs in his possession, police observed him "going directly to the area of 1015 Fairfield Ave, staying for a short period of time, and then retu[r]ning directly back to your deponents" whereupon the informant turned over an "off white chunk substance" that tested as cocaine. Id. On the second occasion, after again confirming that the informant had no drugs in his possession, police observed him "going directly to the area of 1015 Fairfield Ave, entering the front porch area, staying for a short period of time, and then returning directly back to your deponents," where he turned over an "off white chunk substance" that tested as cocaine. Id.

  B. <u>The Evidence and Statements Obtained During Execution of the Search Warrant</u>

Police executed the challenged search warrant on June 12, 2008, at which time Clark was present in a downstairs apartment on the 1015 Fairfield Avenue premises. From that apartment, police seized a quantity of drugs, which subsequently tested as cocaine base,

4

approximately $1703 in cash, and various items of drug paraphernalia.[3] Clark was promptly

arrested and advised of his <u>Miranda</u> rights, whereupon he was shown the seized contraband

and asked if it was real. Clark nodded affirmatively and asked, "What am I looking at? 25

or what?" Appellee's Br. at 5.

C.     District Court Proceedings

On July 31, 2008, a federal grand jury in the Western District of New York indicted

Clark on two counts of drug possession: Count One charges that on June 12, 2008, Clark

possessed with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C.

§ 841(a)(1), (b)(1)(A); Count Two charges Clark with simple possession of more than 5

grams of cocaine base on the same date in violation of 21 U.S.C. § 844(a).

Clark filed a pre-trial motion to suppress the physical evidence seized on June 12,

2008, arguing that it derived from a warrant that was invalid for lack of probable cause,

overbreadth, and staleness. He moved to suppress his post-arrest query, arguing that it was

---

[3] The fact that the identified items were seized from the downstairs apartment was disclosed by the government at oral argument on the suppression motion. Although the record lacks explicit evidence as to the number of residential units located at 1015 Fairfield Avenue, at several points during the suppression proceedings the government made statements that suggest there were only two apartments in the building. <u>See</u> Pretrial Motions Hr'g 22:16-19 (Feb. 19, 2009) ("[T]hey found the defendant in the downstairs . . . they didn't get anything from the upstairs . . . ."); <u>id.</u> at 6:16-18 ("If there are two apartments, if he exercises dominion and control over both apartments, I don't know what we can say in terms of he doesn't have standing."); <u>id.</u> at 8:21-23 ("And I have a feeling, again, that he basement would be accessible from either apartment."). Our focus, however, is on the information provided to the judge who issued the warrant, not on the information provided to the judge presented with a suppression motion.

tainted by the unlawful search.[4]

Pursuant to a general referral of all pre-trial matters, Magistrate Judge Jeremiah H. McCarthy issued reports on April 14 and 27, 2009, recommending that the district court suppress both the seized evidence and the post-arrest statement. See Report & Recommendation, United States v. Clark, No. 08-CR-196(S)(M) (W.D.N.Y. Apr. 27, 2009); Interim Report and Recommendation ("Interim R & R") at 2, United States v. Clark, 08-CR-196(S)(M) (W.D.N.Y. Apr. 14, 2009). The magistrate judge concluded that the warrant was not supported by probable cause to search the whole of the subject multi-family dwelling and that the unlawful search tainted Clark's post-arrest statement. The magistrate judge further concluded that the government could not claim the benefits of the good faith exception to the exclusionary rule because (1) the issuing judge had failed to act as a neutral and detached magistrate, (2) the warrant was facially defective, and (3) the lack of probable cause to search the entire multi-family dwelling was so apparent that police could not reasonably rely on the validity of the warrant. Accordingly, the magistrate judge recommended that the district court suppress the seized physical evidence as the product of an unreasonable search and Clark's post-arrest statement because it was tainted by the search.

After unsuccessfully seeking reconsideration, the government filed objections to the magistrate judge's reports with the district court, which rejected them without discussion in

---

[4] Although Clark initially moved to suppress his statement on the ground that he was not given Miranda warnings, he subsequently withdrew that argument, making it unnecessary for us to discuss it here.

6

a text order and granted defendant's suppression motion. The government timely appealed, invoking our jurisdiction pursuant to 18 U.S.C. § 3731.

## II.  Discussion

### A.  Standard of Review

The government submits that the district court erred in ordering suppression of seized evidence and Clark's statements because the challenged search warrant was supported by probable cause and, in any event, <u>Leon</u>'s good faith exception to the exclusionary rule applies to this case.[5]

In considering these arguments, we are mindful that a court reviewing a challenged warrant – whether at the district or appellate level – "must accord considerable deference to the probable cause determination of the issuing magistrate." <u>Walczyk v. Rio</u>, 496 F.3d 139, 157 (2d Cir. 2007).  Such deference derives not only from the law's recognition that probable cause is "a fluid concept" that can vary with the facts of each case, but also from its "strong preference" for searches conducted pursuant to a warrant, <u>Illinois v. Gates</u>, 462 U.S. 213, 232, 236 (1983), and its related concern that "[a] grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting," <u>United States v. Ventresca</u>, 380 U.S. 102, 108 (1965). Thus, the task of a reviewing court is simply to ensure that the "totality of the circumstances"

---

[5] Because the suppression of Clark's statement derived entirely from his search challenge, we discuss only the latter in explaining our decision to reverse the suppression order in its entirety.

7

afforded the magistrate "a substantial basis" for making the requisite probable cause determination. Illinois v. Gates, 462 U.S. at 238 (internal quotation marks omitted).

When, as in this case, we review a district court's assessment of a search conducted pursuant to a warrant, we apply the clear error standard to its findings of historical fact, but we "analyze de novo the ultimate determination of such legal issues as probable cause and the good faith of police officials in relying upon a warrant." United States v. Smith, 9 F.3d 1007, 1011 (2d Cir. 1993); accord United States v. Gagnon, 373 F.3d 230, 235 (2d Cir. 2004).

Applying these principles to this case, we conclude that, even after deferential review, we cannot identify a "substantial basis" for the issuing judge to have authorized a search of the entire multi-family dwelling at 1015 Fairfield Avenue and all persons in it. At the same time, however, we conclude that defendant's suppression motion should have been denied pursuant to the good faith exception to the exclusionary rule. The record does not support the district court's conclusions that the issuing judge abandoned his neutral and detached role, that the warrant was invalid on its face, or that the lack of probable cause in the warrant affidavit was so evident that executing officers could not reasonably have relied on the validity of the issued warrant.

A.    The Lack of Probable Cause to Search the Subject Multi-Family Dwelling

1.    Identifying Probable Cause to Search Multiple-Occupancy Premises

To protect against unreasonable searches and seizures, the Fourth Amendment states that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. As has long been recognized, probable cause is "a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. at 232; accord Walczyk v. Rio, 496 F.3d at 156-57. Nevertheless, it is generally understood that "probable cause to search is demonstrated where the totality of circumstances indicates a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" Walczyk v. Rio, 496 F.3d at 156 (quoting Illinois v. Gates, 462 U.S. at 238). This required nexus between the items sought and the "particular place" to be searched protects against the issuance of general warrants, instruments reviled by the Founders who recalled their use by Crown officials "to search where they pleased." Stanford v. State of Texas, 379 U.S. 476, 481 (1965) (discussing how abusive use of general warrants contributed to Revolution and, thereafter, to demand for Fourth Amendment); see also Boyd v. United States, 116 U.S. 616, 624-30 (1886) (same); 1 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 1.1, at 7 (4th ed. 2004).

Particularity concerns frequently arise in circumstances where the description in the warrant of the place to be searched is so vague that it fails reasonably to alert executing

9

officers to the  limits of their search authority, see generally Stanford v. Texas, 379 U.S. at 485-86; Steele v. United States, 267 U.S. 498, 503 (1925); Velardi v. Walsh, 40 F.3d 569, 576 (2d Cir. 1994), or where the place described in the warrant does not comport with the place confronting officers when they attempt execution, see generally Maryland v. Garrison, 480 U.S. 79, 85 (1987); United States v. Kyles, 40 F.3d 519, 524 (2d Cir. 1994).  A different particularity concern is presented in cases like this one, where a warrant particularly describes the place to be searched – "1015 Fairfield Ave, being a multi family dwelling" – but a question arises as to whether the breadth of that description outruns the probable cause supporting the warrant.  See 2 LaFave, supra, § 4.5(a), at 578.  Such cases fall at the confluence of the Fourth Amendment's probable cause and particularity requirements, which courts and commentators have construed to demand that a search warrant for a multiple-occupancy building be supported by a showing of probable cause as to each unit.  See id. § 4.5(c), at 591 & n.94 (collecting cases and concluding "it is constitutionally permissible for a single warrant to authorize the search of more than one subunit in a multiple-occupancy building when there has been a probable cause showing as to each subunit included"); id. § 4.5(b), at 580 ("[I]n the absence of a probable cause showing as to all the living units so as to justify a search of them all, a search warrant directed at a multiple-occupancy structure will ordinarily be held invalid if it describes the premises only by street number or identification common to all the subunits located within the structure." (footnotes omitted)).  This court effectively recognized this principle in United States  v. Bermudez, 526 F.2d 89, 96-97 (2d Cir. 1975), when it concluded that the district court had properly held a warrant

to search an entire building invalid on overbreadth grounds where probable cause existed only with respect to specific floors.[6]

## 2. "Control" as a Factor Relevant to Probable Cause

The government acknowledges this body of law, but submits that it is subject to an exception: "Probable cause need not be shown for each particular unit [of a multiple-occupancy building] when the application establishes that the suspect exercises <u>control</u> over the entire premises." Appellant's Br. at 13 (emphasis added). We do not think the law supports such an absolute pronouncement.

The New York Court of Appeals, whose rulings presumably controlled issuance of the warrant here at issue, as well as several of our sister circuits, have referenced "control" of a multiple-occupancy building as a fact that can support a warrant to search the whole premises. <u>See</u> <u>People v. Tambe</u>, 71 N.Y.2d 492, 503, 527 N.Y.S.2d 372, 377 (1988) (holding that where probable cause exists to believe that several individuals are involved in criminal activity, and that evidence of crime is in possession of one of them, law permits magistrate to find "probable cause to search the places in the control" of each); <u>see also</u> <u>United States v. Butler</u>, 71 F.3d 243, 249 (7th Cir. 1995); <u>United States v. Alexander</u>, 761 F.2d 1294, 1301 (9th Cir. 1985); <u>United States v. Gonzalez</u>, 697 F.2d 155, 156 (6th Cir. 1983). Nevertheless, we do not understand these cases to support an exception to the general requirement that the search of a multiple-occupancy building must be supported by probable cause to believe that

---

[6] <u>Bermudez</u> nevertheless held that the suppressed evidence could be used for purposes of impeachment. <u>See</u> 526 F.2d at 97.

evidence of criminality will be found throughout the building. While control may be a fact relevant to the identification of such probable cause, see generally United States v. Johnson, 26 F.3d 669, 694 (7th Cir. 1994) (observing that search of multiple-occupancy building is not overbroad when "(1) the officer knows there are multiple units and believes there is probable cause to search each unit, or (2) the targets of the investigation have access to the entire structure"), like any relevant fact, control does not necessarily dictate the same probable cause determination in every case. That depends on the totality of the circumstances. See Illinois v. Gates, 462 U.S. at 231-32 (rejecting rules that make any single fact determinative in probable cause analysis).

Control, after all, can be manifested in various ways – e.g., ownership, occupancy, access, authority to exclude others – and exercised to varying degrees. Thus, even though a person may own the multiple-occupancy building from which he deals drugs, probable cause to search the whole is more likely to be identified if the building is a two-family structure of which the suspect is the only occupant than if it is a twenty-family structure in which the suspect occupies only a single residential unit with other units leased by families unassociated with his criminality. We do not attempt to hypothesize all the contexts in which various types or degrees of control might be evidenced in a multiple-occupancy building. We note simply that they are sufficiently numerous to defeat the government's argument that a simple allegation of control – necessarily and by itself – provides a substantial basis for authorizing the challenged search of a multiple-occupancy building.

Indeed, we observe that the single case cited by the government in support of its

control argument, United States v. Gusan, 549 F.2d 15 (7th Cir. 1977), does not recognize such a rule. At the time the search there at issue was authorized, police were unaware that the first and second floors of the subject premises contained separate apartments. In fact, police observations of defendant's movements, as reported in the warrant affidavit, supported probable cause to believe that the defendant exercised control over both floors as a single residence. See id. at 20 (Swygert, J., concurring).[7] Thus, to the extent Gusan illustrates an exception to the rule that the search of a multiple-occupancy building must be supported by probable cause to search each unit, it is based not on the defendant's "control" of multiple units, but on reasonable law enforcement perceptions that the premises was being used as a single unit.

> This is consistent with an exception that has been summarized as follows:

> [I]f the building in question from its outward appearance would be taken to be a single-occupancy structure and neither the affiant nor other investigating officers nor the executing officers knew or had reason to know of the structure's actual multiple-occupancy character until execution of the warrant was under way, then the warrant is not defective for failure to specify a subunit within the named building.

2 LaFave, supra, § 4.5(b), at 581-82 & n.64 (collecting cases recognizing exception (footnote omitted)); see Maryland v. Garrison, 480 U.S. at 86-88 (identifying good faith reliance on warrant to search third floor where police did not discover premises contained two apartments until they began execution); United States v. Kyles, 40 F.3d at 524 (rejecting

---

[7] A subsequent suppression hearing revealed that defendant had to pass through the lower floor apartment – which was vacant at the time of the search – to reach the second floor apartment. See United States v. Gusan, 549 F.2d at 17.

argument that warrant for apartment should not have authorized search of defendant's bedroom because agents "had no reason to believe" bedroom was separate residence); see also National City Trading Corp. v. United States, 635 F.2d 1020, 1024 (2d Cir. 1980) (rejecting overbreadth challenge to search of commercial suite shared by two entities where there was "no demarcation . . . between the rooms occupied" by each). This exception is plainly not applicable here because when police applied for the challenged warrant, they specifically described 1015 Fairfield Avenue as a "multi family dwelling," and in no way indicated that they understood Clark to be using the premises as a single residence.

3.  The Affidavit's Allegations of Control Were Insufficient To Establish Probable Cause To Search the Entire Subject Premises

When the allegations of "control" in this case are properly considered in the context of the totality of circumstances, we conclude that the whole does not establish probable cause to support the challenged search of all residences in the subject building. To be sure, an informant reported that Clark exercised "full control" over the building, but the informant was then untried and his assertion entirely conclusory. While no specific test determines when informant information can be relied on in making a probable cause determination, the Supreme Court has instructed that the "totality of circumstances" must present the magistrate with "[s]ufficient information . . . to allow that official" to make the necessary determinations; "his action cannot be a mere ratification of the bare conclusions of others." Illinois v. Gates, 462 U.S. at 239 (emphasis added).

Here, such information was totally lacking on the issue of control.[8] First, the issuing judge was not advised as to the size of the building or the number of residential units it contained, which would have provided an important, if not essential, context for evaluating the probability of the "full control" allegation. Second, nothing in the warrant affidavit advised the issuing judge what the informant meant by "full control." Indeed, the affidavit did not even disclose whether the informant's allegation was based on personal observation, a hearsay account, or mere rumor. Third, the affidavit did not provide any descriptive facts consistent with the full control allegation. We do not suggest that any one of these facts was necessary to establish probable cause, see id. at 230, but the Supreme Court has recognized such facts as relevant to a consideration of the totality of circumstances, see id. at 233. We thus conclude that the absence of any such information left the issuing judge with a record from which he could not himself make a determination of control sufficient to support probable cause to search the entire multi-family dwelling. See id. at 239 (reiterating that wholly conclusory statement is inadequate to allow independent determination of probable cause (citing Nathanson v. United States, 290 U.S. 41 (1933))).

In urging otherwise, the government submits that the informant's control conclusion must be considered together with two other allegations: (1) that surveillance officers observed Clark "entering and remaining and exercising control at the residence of 1015

---

[8] While control was only part of the probable cause presentation in this case, it was the only part that supported a search of the entire multi-family dwelling, as opposed to a residence specifically linked to the defendant.

15

Fairfield Ave," Warrant Aff. at 2 (emphasis added), and (2) that the informant made two controlled purchases of cocaine from Clark at the subject building. We are not persuaded that the sum of these allegations provided a substantial basis to order the search of all parts of and persons in the multi-family dwelling.

Focusing first on the controlled purchase allegations, the warrant affidavit states only that the informant went to the "area" of 1015 Fairfield Avenue to make the first purchase and to the building's "front porch area" to make the second. Id. at 3. Thus, these allegations failed to provide any information as to where within the multi-family dwelling Clark dealt or stored drugs, much less did they establish his control over all units in and parts of the premises.[9] The government does not contend otherwise. Rather, it submits that the controlled purchases corroborated the informant's allegation that Clark was dealing drugs at 1015 Fairfield Avenue and that the partial corroboration provided a basis for the issuing judge to credit the informant's further allegation that Clark exercised "full control" over the building.

Partial corroboration of an informant is a circumstance that, on totality review, may allow a judicial officer to credit the informant's whole account. See Illinois v. Gates, 462 U.S. at 237-38; United States v. Wagner, 989 F.2d 69, 73 (2d Cir. 1993). While we generally defer to an issuing judge's discretion in deciding when partial corroboration suffices to this

_____

[9] Notably absent from the warrant affidavit is any allegation as to where the informant said the controlled purchases occurred, information about which he presumably had direct knowledge.

16

purpose, there are outer limits, some grounded in law, others in common sense and experience. Here, law and experience combine to require more than corroboration of defendant's criminal conduct somewhere in the subject building – conduct that does not speak at all to the defendant's control over the whole of the building – to transform the informant's conclusory assertion of full control into a substantial basis to authorize the search of an undisclosed number of residential units.

The law to which we refer is, of course, the Fourth Amendment, which specifically identifies the right of persons to be secure in their homes as a basis for conditioning the issuance of warrants on a demonstration of probable cause and particularity. See generally Georgia v. Randolph, 547 U.S. 103, 115 (2006) (acknowledging Fourth Amendment's recognition that "the home is entitled to special protection as the center of the private lives of our people" (internal quotation marks omitted)). This, by itself, cautions against hastily ascribing control over one person's home to another. This lesson is reinforced by experience, which teaches that "it is not typically the case that those involved in . . . criminality" somewhere in a multiple-occupancy building "would have access to all of the separate living units" contained therein. 2 LaFave, supra § 4.5(b), at 579. Where law and experience thus effectively give rise to a presumption that one person's home is not in the control of a third party, a conclusory assertion of control by an informant who has been corroborated only in some other respect does not provide a substantial basis for a judicial officer to find it probable that evidence of the third party's criminality will be found in residences other than his own.

17

This conclusion is consistent with the view of the New York Court of Appeals in People v. Tambe, 71 N.Y.2d at 503, 527 N.Y.S.2d at 377, which, in upholding probable cause to search multiple premises controlled by a number of confederates for criminal evidence likely to be in the possession of one of them, emphasized that a different rule might apply "where the fruits of the criminal enterprise are probably located in one of a few locations but the nature of the information is such that a search of each of these locations would intrude upon the rights of individuals in no way involved in the criminal activity under investigation." Id. That is this case. Because the warrant affidavit contained no information as to either the number of residential units within 1015 Fairfield Avenue or where within the building Clark dealt drugs, there was a real possibility that a search of the entire building and all persons in it would intrude upon the rights of persons in no way linked to the suspected criminal activity. In these circumstances, the law demanded more than a conclusory allegation of control by a partially corroborated informant to permit the issuing judge to find probable cause to support the challenged warrant.

Nor do we think that "more" was supplied by surveillance observations of Clark "entering and remaining and exercising control at the residence at 1015 Fairfield Ave." Warrant Aff. at 2 (emphasis added). While the surveillance allegation derived from police officers rather than an untested informant, and was based on personal observation, it was nevertheless conclusory. The issuing judge was not told what the officers meant by "exercising control," a concept that could easily mean less than full control. A surveillance officer who saw a suspect unlock the common entry door to a multiple-occupancy building

18

might reasonably think he was "exercising control" over the building, but that would hardly provide a substantial basis for finding probable cause to search an unspecified number of residential units not linked to the defendant or his criminal activities. We further note that to the extent the affidavit reported that surveillance observed Clark exercising control "at the residence," the affidavit is devoid of information that would allow the issuing judge to determine whether "residence" referred to the building as a whole or to a particular residential unit.

In sum, while the totality of circumstances permitted the issuing judge to find it probable that Clark was dealing drugs from somewhere within 1015 Fairfield Avenue, it did not provide a substantial basis to conclude that Clark so controlled the various residential units in that multi-family dwelling that there was probable cause to think evidence of his criminal conduct could be found throughout the building.[10]

B.     The Good Faith Exception Applies to this Case

A determination that the warrant at issue was not supported by probable cause to search the entire multi-family dwelling does not automatically dictate the suppression of all physical evidence seized or statements derived therefrom. As the Supreme Court recently

_____

[10] The government submits that any error in issuing so broad a search warrant was necessarily harmless because incriminating evidence was seized only from the ground floor apartment wherein Clark was found. To the extent this might be construed to suggest that probable cause existed at least for that apartment, we are not persuaded. The government was obliged to demonstrate probable cause to search a particular apartment before securing the warrant, not after executing it. Moreover, we note that the government did not specifically deny searching other residences in executing the warrant; it simply denied making any seizures therefrom.

19

reminded courts, suppression is "'our last resort, not our first impulse'" in dealing with violations of the Fourth Amendment. Herring v. United States, 129 S. Ct. 695, 700 (2009) (quoting Hudson v. Michigan, 547 U.S. 586, 591 (2006)).  The animating principle of the exclusionary rule is deterrence of police misconduct, but the extent to which the rule is so justified "varies with the culpability of the law enforcement conduct." Id. at 701 (suggesting that deterrent value of exclusionary rule is most effective in cases of "'flagrant or deliberate violation of rights'" (quoting Henry J. Friendly, The Bill of Rights as a Code of Criminal Procedure, 53 Calif. L. Rev. 929, 953 (1965), and citing Brown v. Illinois, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part))).  Thus, in United States v. Leon, the Supreme Court recognized an exception to the exclusionary rule for "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant."  468 U.S. at 922.  The Court reasoned that, in those circumstances, "[p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." Id. at 921.

"The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance" on an invalidated warrant. United States v. George, 975 F.2d 72, 77 (2d Cir. 1992); accord United States v. Santa, 180 F.3d 20, 25 (2d Cir. 1999).  In assessing whether it has carried that burden, we are mindful that, in Leon, the Supreme Court strongly signaled that most searches conducted pursuant to a warrant would likely fall within its protection.

"[S]earches pursuant to a warrant will rarely require any deep inquiry into

20

reasonableness," Illinois v. Gates, 462 U.S. at 267 (White, J., concurring in judgment), for "a warrant issued by a magistrate normally suffices to establish" that a law enforcement officer has "acted in good faith in conducting the search." United States v. Ross, 456 U.S. 798, 823 n.32 (1982).

United States v. Leon, 468 U.S. at 922 (alteration in Leon). It was against this presumption of reasonableness that the Supreme Court identified four circumstances where an exception to the exclusionary rule would not apply:

> (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

United States v. Moore, 968 F.2d 216, 222 (2d Cir. 1992) (citing Leon, 468 U.S. at 923).

Here, the district court concluded that the last three circumstances were all present in this case, precluding application of the good faith exception. Reviewing this determination de novo, we conclude to the contrary.

### 1.    The Issuing Magistrate Did Not Abandon His Judicial Role

The district court concluded that the issuing judge had abandoned his judicial role by relying solely on the affidavit's conclusory allegations of control in finding probable cause to search the whole of a multiple-occupancy building. This misconstrues the abandonment concern identified in Leon.

There, the Supreme Court observed that in issuing warrants, a magistrate must "perform his neutral and detached function" as a judicial officer "and not serve merely as a rubber stamp for the police." United States v. Leon, 468 U.S. at 914 (internal quotation

21

marks omitted). But, as the Court later explained, what this means is that officers cannot reasonably rely on a warrant issued by a magistrate who "wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979)." Id. at 923. The quoted language contains two important qualifiers. The abandonment must be (1) wholesale rather than partial and (2) "in the manner condemned in Lo-Ji Sales." That is not this case.

In Lo-Ji Sales, a town justice issued a warrant for the seizure of obscene materials from an adult bookstore. The justice then accompanied police officers and prosecutors to the store and, in the course of a six-hour search, reviewed items for himself and decided which could be seized. See Lo-Ji Sales, Inc. v. New York, 442 U.S. at 322. The Supreme Court held the warrant invalid, reasoning that the judge had "allowed himself to become a member, if not the leader, of the search party which was essentially a police operation." Id. at 327. He had ceased to act "as a judicial officer" and assumed the role of "an adjunct law enforcement officer." Id. In reaching this conclusion, Lo-Ji Sales relied on Coolidge v. New Hampshire, 403 U.S. 443 (1971), a case in which the Supreme Court invalidated warrants issued by a State Attorney General in his capacity as a justice of the peace although he was the law enforcement officer "actively in charge of the investigation and later was to be chief prosecutor at the trial," id. at 450 (observing that "prosecutors and policemen simply cannot be asked to maintain the requisite neutrality with regard to their own investigations").

Animating these two decisions is a common precept: that "someone independent of the police and prosecution must determine probable cause." Shadwick v. City of Tampa, 407

22

U.S. 345, 348 (1972). Nevertheless, the law will not hastily assume a magistrate's surrender of his judicial independence to the police or prosecution. As the Supreme Court clarified in Lo-Ji Sales, such an inference cannot be drawn from the mere fact that a magistrate has made himself "readily available to law enforcement officers who may wish to seek the issuance of warrants by him," 442 U.S. at 328 n.6, a point this court emphasized in United States v. Whitehorn, 829 F.2d 1225, 1232 (2d Cir. 1987) (upholding application of good faith exception where magistrate did not abandon "neutral and detached" role by going to FBI office to review and issue warrants because magistrate "did not assist in the drafting of the warrant or in any aspect of the . . . investigation," and nothing suggested he was in FBI office "for any reason other than to facilitate the issuance of the warrant on a Saturday"). More to the point for this case, abandonment of judicial neutrality and detachment properly cannot be inferred from the fact that the magistrate committed legal error in his assessment of probable cause. See 1 LaFave, supra, § 1.3(f), at 78 & n.84 (collecting cases concluding that "rubber stamp" cannot be established "merely on the basis of the substantial inadequacy of the probable cause showing in the affidavit"). Indeed, Leon separately addresses that circumstance and instructs that it precludes good faith reliance only when the warrant affidavit was "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" United States v. Leon, 468 U.S. at 923 (quoting Brown v. Illinois, 422 U.S. at 610-11 (Powell, J., concurring in part)). We address that concern infra at **[26-31]**. Here, we simply clarify that legal error by the issuing judge in identifying probable cause does not, by itself, indicate the sort of wholesale abandonment of the judicial

23

role discussed in <u>Leon</u>. Because nothing else in the record indicates such abandonment in this case, we conclude that this factor did not preclude the officers' good faith reliance on the challenged warrant.

## 2. The Challenged Warrant Is Not Facially Deficient

In <u>Leon</u>, the Supreme Court observed that "a warrant may be so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid." <u>Id.</u> at 923. The district court identified such a facial defect in the warrant's description of the premises to be searched as a "multi family dwelling," which it concluded "should have raised a red flag as to the need to show probable cause to search <u>each unit</u> of the premises." Interim R & R at 7 (emphasis in original). This conclusion conflates a facial defect in the warrant with a patent lack of probable cause to support the warrant.

<u>Massachusetts v. Sheppard</u>, 468 U.S. 981 (1984), and <u>Groh v. Ramirez</u>, 540 U.S. 551 (2004), illustrate that a warrant is facially defective when it omits or misstates information specifically required to be contained therein, <u>i.e.</u>, "the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. In <u>Sheppard</u>, a form warrant for narcotics searches was used to authorize a search for evidence of murder. Although the affidavit in support of the warrant detailed the non-narcotics evidence sought, the Supreme Court upheld a lower court determination that "the warrant was constitutionally defective because the description [of items to be seized] in the warrant was completely inaccurate and the warrant

24

did not incorporate the description contained in the affidavit."  468 U.S. at 988 n.5.[11]

In Groh v. Ramirez, agents submitted for approval a warrant that erroneously described the suspect's residence in the area reserved for identification of the items to be seized.  Although the warrant affidavit detailed the latter information, the Court concluded that its complete absence from the warrant precluded reasonable reliance.  See 540 U.S. at 564;[12] see also United States v. George, 975 F.2d at 78 (holding that officers could not reasonably rely on warrant that included authorization to seize unspecified evidence of criminality not limited "either to a generic classification, . . . or, even more egregiously, to a particular crime").

The warrant here contains no similar defect.  It specifically identified the place to be

---

[11] Nevertheless, the Court concluded that the officer's reliance on the warrant was reasonable because the officer had brought the defect to the attention of the issuing judge, who had represented that he would correct it, but then failed to do so unbeknownst to the officer.  See Massachusetts v. Sheppard, 468 U.S. at 986-87.

[12] Groh was a civil action under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), and 42 U.S.C. § 1983.  In addressing the objective reasonableness of defendants' reliance on the invalidated warrant for purposes of qualified immunity, the Supreme Court observed that the standard tracked that applicable to determining good faith reliance under Leon.  See Groh v. Ramirez, 540 U.S. at 565 n.8.  As this court recently observed, however, the Supreme Court has since emphasized that "application of the exclusionary rule requires the additional determination that the officers' conduct was 'sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.'"  United States v. Rosa, 626 F.3d 56, 66 (2d Cir. 2010) (quoting Herring v. United States, 129 S. Ct. at 702, in concluding that warrant's particularity failure to link items to be seized to suspected criminal activity did not preclude good faith reliance under totality of circumstances).  We have no occasion to discuss Rosa further because, as we explain in the next paragraph of text, the warrant here at issue is not facially defective.

25

searched – "1015 Fairfield Ave, being a multi family dwelling located on the south side of Fairfield Ave and located on SBL# 144.31-3-26, in the City of Niagara Falls, New York." Warrant at 1. It specifically identified the items that could be seized:

> Cocaine and any other controlled substances as defined in Article 220 and 221 of the Revised Penal Laws of the State of New York, as well as for any implements used to administer same, or prepare same for packaging or sale or other dispensation of aforementioned substances, as well as for any monies, all written papers or articles, or keys, or any other papers that tend to show that crimes relating to violation of Article 220 and 221 of the Revised Penal Laws of the State of New York have been committed.

Id.

To be sure, the Constitution further requires that warrants be issued only "upon probable cause," but it does not require that probable cause be stated in the warrant itself. See, e.g., United States v. Grubbs, 547 U.S. 90, 98 (2006). Thus, to the extent probable cause was lacking to support a warrant to search the whole of the premises particularly described, the defect lies not in the warrant but in the warrant affidavit. That defect is properly addressed in considering a different Leon concern, whether the lack of probable cause was so obvious as to preclude reasonable reliance. See 1 LaFave, supra § 1.3(f), at 87 (noting "[t]his kind of case . . . does not fit within the Leon third situation [but, rather,] is analytically most similar to that in which it turns out the warrant is lacking in any probable cause showing, and ought to be resolved in the same way" (internal citations omitted)). We turn to that concern in the next subsection of this opinion.

      3.      <u>The Warrant Affidavit Was Not So Lacking in Indicia of Probable Cause as To Preclude Reasonable Reliance</u>

26

Leon instructs that officers cannot reasonably rely on a warrant issued on the basis of an affidavit "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" United States v. Leon, 468 U.S. at 923 (quoting Brown v. Illinois, 422 U.S. at 610-11 (Powell, J., concurring in part)).

Such a concern most frequently arises when affidavits are bare bones, i.e., totally devoid of factual circumstances to support conclusory allegations. Cf. United States v. Leon, 468 U.S. at 926 (rejecting reasonable reliance challenge where warrant was supported by "much more than a 'bare bones' affidavit"); United States v. Moore, 968 F.2d at 222-23 (same); see also United States v. West, 520 F.3d 604, 610 (6th Cir. 2008) (holding that good faith exception does not apply to bare bones affidavit based entirely on unsubstantiated conclusions). The concern is particularly acute when facts indicate that the "bare-bones description . . . was almost calculated to mislead." United States v. Reilly, 76 F.3d 1271, 1280 (2d Cir.), aff'd on reh'g, 91 F.3d 331 (2d Cir. 1996). In such circumstances, one Leon concern, i.e., that "a reasonably well trained officer would have known" that the challenged warrant was not supported by probable cause, United States v. Leon, 468 U.S. at 922 n.23, is reinforced by another, i.e., deception, or at least an apparent intent to deceive.

At the opposite end of the spectrum are cases in which a defective warrant issued based on an affidavit providing detailed factual allegations in support of probable cause. Such cases almost invariably demonstrate reasonable reliance. As the Supreme Court explained in Leon, "[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause . . . . In the ordinary case, an officer cannot be expected to question the

27

magistrate's probable-cause determination . . . ." Id. at 921; accord United States v. Falso, 544 F.3d 110, 129 (2d Cir. 2008) (declining to hold that agents acted unreasonably in relying on judge's probable cause determination because "the error . . . was committed by the district court in issuing the warrant, not by the officers who executed it"); United States v. Cancelmo, 64 F.3d 804, 807 (2d Cir. 1995) (holding that any error in issuance of warrant was "attributable to the magistrate who determined that the facts as alleged by the agents established probable cause"); United States v. Thomas, 757 F.2d 1359, 1368 (2d Cir. 1985) (holding that, where magistrate, "whose duty it is to interpret the law," determined that canine sniff could form basis for probable cause, "it was reasonable for the officer to rely on this determination"). The conclusion applies with particular force in circumstances where "thoughtful and competent judges" might disagree as to whether the facts alleged established probable cause. United States v. Leon, 468 U.S. at 926; accord United States v. Falso, 544 F.3d at 128 (collecting cases).

This case falls somewhere in between these two extremes. The warrant affidavit was not completely bare bones. It provided sufficient details to permit the issuing judge to find probable cause to believe that Clark was dealing drugs from somewhere within 1015 Fairfield Avenue. In addition to reporting that an untested informant had ascribed such conduct to Clark and that surveillance officers had witnessed Clark entering and remaining inside the suspect premises on multiple occasions, the affidavit detailed two controlled buys made by

28

the informant directly from Clark at or very near the subject property.[13]  Further, in seeking leave to search the property, the warrant affidavit candidly advised the issuing judge that 1015 Fairfield Avenue was a multi-family dwelling, cf. United States v. Reilly, 76 F.3d at 1280 (faulting officers for providing description of property "almost calculated to mislead"), and strove to establish probable cause to search the whole of such premises by referencing a circumstance that had found some support in precedent:  defendant's "control," see generally People v. Tambe, 71 N.Y.2d at 503, 527 N.Y.S.2d at 377.

A problem arises only when we consider the allegations of control in the warrant application.  Ascribed to an informant ("full control") and surveillance officers ("exercising control"), the allegations are entirely conclusory.  Warrant Aff. at 2.  We have already explained why such conclusory assertions about a concept that can be manifested in different ways and to different degrees depending on circumstances were insufficient to permit the issuing judge to find probable cause to search the entirety of a building containing an undisclosed number of residential units.  See supra at **[11-18]**.  Nevertheless, we are not persuaded that law enforcement conduct here was so "flagrant" or "culpable" in violating Fourth Amendment rights as to compel suppression.  Herring v. United States, 129 S. Ct. at

---

[13] While it might have been preferable for the affidavit to disclose not only surveillance observations of the buys – which were less than detailed – but also the informant's account of where the buys actually occurred, the allegations were sufficient to demonstrate probable cause to believe that evidence of Clark's criminality would be found somewhere in 1015 Fairfield Avenue.  See Walczyk v. Rio, 496 F.3d at 157 (collecting cases instructing that probable cause does not demand showing that "good-faith belief be correct or more likely true than false," but only "such facts as make wrongdoing or the discovery of evidence thereof probable" (internal quotation marks omitted)).

702; see also United States v. Rosa, 626 F.3d at 64.

In reaching this conclusion, we note that, before the district court, Clark appears to have challenged only the specificity of the government's control allegations, not their bona fides.[14] At the time the warrant issued, however, the need to allege control with some factual specificity appears not to have been the subject of discussion in prior precedent from this or other courts. As we have already observed, in People v. Tambe, the New York Court of Appeals cautioned that the rule it there recognized allowing for a search of all premises "in the control of" various criminal associates to find evidence "likely to be in the possession of one of them" might "be different" if such searches "would intrude upon the rights of individuals in no way involved in the criminal activity under investigation." 71 N.Y.2d at 503, 527 N.Y.S.2d at 377. Tambe, however, gave no indication that where control was alleged in order to establish probable cause to search a multiple-occupancy building, it had to be accompanied by descriptive facts. We locate legal support for such a conclusion in the Supreme Court's general admonition that a judge issuing a warrant must determine probable cause for himself and not simply adopt the conclusions of law enforcement applicants. See Illinois v. Gates, 462 U.S. at 239. We also locate practical support for the conclusion in the variable nature of "control" and in the caution that is warranted when a search may intrude on the privacy rights of a number of persons. But we cannot fault police officers for failing

---

[14] Thus, we have no reason to remand for the district court to ascertain what facts supported the allegation of control in order to determine whether a well-trained officer aware of those facts could, in good faith, have alleged control.

to make these same connections in advance of the courts. Indeed, where the need for specificity in a warrant or warrant affidavit on a particular point was not yet settled or was otherwise ambiguous, we have declined to find that a well-trained officer could not reasonably rely on a warrant issued in the absence of such specificity. See United States v. Buck, 813 F.2d 588, 592 (2d Cir. 1987) (holding that evidence obtained pursuant to warrant containing only catch-all description of property to be seized should not have been suppressed because, when warrant issued, law was ambiguous as to exact requirements of particularity clause). Of course, once the requirement is established, police may not thereafter claim reasonable reliance on warrants secured in the absence of compliance. See id. at 593 n.2; accord United States v. George, 975 F.2d at 78.

In sum, because the warrant affidavit was not completely bare bones, because the issuing judge was told the premises to be searched was a multi-family dwelling, because control can be a factor relevant to assessing probable cause to search the whole of such premises, and because the need to support an allegation of control with descriptive facts was not previously established in precedent, we conclude that the application was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." United States v. Leon, 468 U.S. at 923 (internal quotation marks omitted). Accordingly, the government is entitled to claim the benefit of the good faith exception to the exclusionary rule, and defendant's motion to suppress seized evidence should have been denied.

## III. Conclusion

To summarize, we conclude as follows:

31

1. Because "control" is a concept that can be manifested in various ways and to different degrees, conclusory allegations that defendant "controlled" a multi-family dwelling were insufficient to allow a judge to find probable cause to search each of the unspecified number of residences in the building.

2. Defendant's motion to suppress evidence derived from the invalid search should have been denied pursuant to the good faith exception to the exclusionary rule recognized in United States v. Leon, 468 U.S. at 922, because, contrary to the district court's determinations,

> (a) the issuing judge did not abandon his neutral and detached judicial role in mistakenly finding probable cause to support the challenged warrant,

> (b) the warrant was not facially invalid, and

> (c) the warrant affidavit was not completely bare bones and the need to support a conclusory allegation of "control" with specific facts not so established in law as to preclude the police from reasonably relying upon the validity of the challenged warrant in this case.

Suppression order REVERSED and case REMANDED for further proceedings consistent with this opinion.