20-4054-cr (L)
*United States v. Thompson (Cooper)*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of August, two thousand twenty-three.

Present:
    DEBRA ANN LIVINGSTON,
        *Chief Judge*,
    ROSEMARY S. POOLER,
    ROBERT D. SACK,
        *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

                *Appellee*,

        v.                                                          20-4054-cr (L)
                                                                    21-1969-cr (CON)
RICKY TURNER, ARGENIS ALBINO HERRERA, DIONES
BOWENS, SHANE SHUMAKER, VICTORIA ORLANDO,
VICKY HOFSTETTER, AKA VICKY HOFFSTETTER,
KOREE RUNYAN, JENNA REDDING, AKA JENNA ANN
REDDING,

                *Defendants*,

DEONTE COOPER, AKA TERRY, AND TITUS
THOMPSON,

                *Defendants-Appellants*.

_____

1

For Appellee:                          MONICA J. RICHARDS, Assistant United States Attorney, *for* Trini E. Ross, United States Attorney for the Western District of New York, Buffalo, NY.

For Defendant-Appellant             FRANK M. BOGULSKI, Attorney at Law, Buffalo, NY.
Deonte Cooper:

For Defendant-Appellant             STEVEN A. METCALF II, Metcalf & Metcalf, P.C., New
Titus Thompson:                     York, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (Wolford, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendants-Appellants Deonte Cooper ("Cooper") and Titus Thompson ("Thompson") appeal from the judgments of conviction of the United States District Court for the Western District of New York (Wolford, *J.*) entered on November 25, 2020, and August 4, 2021, respectively. After a jury trial, Cooper was convicted of one count of conspiracy to commit firearms offenses, in violation of 18 U.S.C. §§ 371, 922(a)(3), 922(a)(6), 922(a)(1)(A), and 923(a). The district court sentenced Cooper principally to 60 months' imprisonment and two years' supervised release. After the same trial, Thompson was convicted of one count of conspiracy to commit firearms offenses, in violation of 18 U.S.C. §§ 371, 922(a)(3), 922(a)(6), 922(a)(1)(A), and 923(a); one count of unlawful dealing in firearms, in violation of 18 U.S.C. §§ 922(a)(1)(A), 923(a), and 924(a)(1)(D); one count of being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and one count of using and maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1). [1] The district court sentenced Thompson principally to 262 months' imprisonment and three years' supervised release.

---

[1] Thompson was acquitted of a fifth count, which charged possession of firearms in furtherance of

2

On appeal, Defendants-Appellants raise a variety of issues. Thompson challenges his conviction, arguing that: (1) the district court erred in denying his motion to suppress evidence seized during the May 18, 2018, execution of a search warrant at his residence at 89 Parkridge Avenue ("89 Parkridge"); (2) the district court erred in denying his motion for acquittal pursuant to Federal Rule of Criminal Procedure 29; (3) the district court abused its discretion in denying his motion for a new trial pursuant to Federal Rule of Criminal Procedure Rule 33; and (4) he received ineffective assistance of counsel. Cooper likewise argues that: (1) the district court erred in denying his motion for acquittal pursuant to Rule 29; and (2) the district court abused its discretion in denying his motion for a new trial pursuant to Rule 33. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.[2]

\* \* \*

## A. Motion to Suppress

On appeal from a ruling on a motion to suppress, we review the "district court's conclusions of law *de novo* and its conclusions of fact for clear error." *United States v. McKenzie*, 13 F.4th 223, 231 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2766 (2022).

### 1. Reliability of the Informant

Thompson first argues that the information supporting the search warrant for 89 Parkridge neither came from a reliable source nor was corroborated, and thus the warrant should not have issued. We disagree. The issuing magistrate, New York State Supreme Court Justice John L. Michalski ("Justice Michalski"), had a substantial basis to find probable cause for the warrant.

---

drug trafficking activities, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

[2] Citations in the format "TA-__" refer to the appendix filed by Defendant-Appellant Titus Thompson. Citations in the format "CA-__" refer to the appendix filed by Defendant-Appellant Deonte Cooper.

*See United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) ("[T]he task of a . . . court [reviewing a warrant] is simply to ensure that the 'totality of the circumstances' afforded the magistrate 'a substantial basis' for making the requisite probable cause determination." (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983))); *see also United States v. Gagnon*, 373 F.3d 230, 235 (2d Cir. 2004) (explaining that the "totality of the circumstances" includes: "an informant's veracity, reliability and basis of knowledge, and the extent to which an informant's statements . . . are independently corroborated" (internal quotation marks and citations omitted)).

First, the confidential informant, Robert Williams, Jr. ("Williams"), spoke to both the officers and Justice Michalski in person. *See id.* at 236 ("[A] face-to-face informant must be thought more reliable than an anonymous telephone tipster, for the former runs the greater risk that he may be held accountable if his information proves false." (internal quotation marks and alteration omitted)). He recounted his basis of knowledge, including, *inter alia*, that he had a history with Thompson, had purchased powdered cocaine from Thompson in the past ten days, and had observed firsthand drugs and firearms at 89 Parkridge in the past ten days. This information was corroborated by Buffalo Police Department Detective Michael Acquino ("Detective Acquino"), who confirmed Williams's description of the appearance and structure of 89 Parkridge, as well as details about Thompson. And the Bureau of Alcohol, Tobacco, Firearms and Explosives verified information provided by Williams about the residents at 89 Parkridge. In all, the totality of the circumstances provided Justice Michalski with a substantial basis to find probable cause.

## 2. Accuracy of the Information in the Warrant Application

Next, Thompson argues that the warrant application contained misrepresentations about the reliability of the informant, warranting suppression. We again disagree. Thompson points

4

to no facts suggesting that the warrant application contained deliberate falsehoods or was drafted with a reckless disregard for the truth, relying instead on speculation that is undercut by the record, including the district court's findings at an evidentiary hearing. For instance, while Thompson argues that the officers sought to obscure Williams's role in the conspiracy by applying for the search warrant for 89 Parkridge from Justice Michalski, the record shows that Justice Michalski was informed by both Detective Acquino and Williams himself that Williams had been arrested that morning. *See* TA-3308. The testimony before the district court also makes clear that the label "confidential source" was used only in a colloquial sense to describe Williams, and that Justice Michalski, who testified at the evidentiary hearing, was not influenced by any conclusory reference to Williams as a "reliable confidential source." *See* TA-3286 to -87, TA-3315 to -16, TA-3359. As already stated, Justice Michalski was informed that Williams had been arrested earlier that day and heard Williams's admission to having prior dealings with cocaine and firearms. See TA-3308. We thus see no basis for concluding that the issuing magistrate was misled and decline to disturb the denial of the motion to suppress on this ground.

### 3. The Upper and Lower Apartments

Next, Thompson contends that the search warrant lacks particularity and probable cause insofar as 89 Parkridge consists of an upper and lower apartment, both of which were searched. Thompson is incorrect. The search warrant did not lack particularity. *See Clark*, 638 F.3d at 94 (explaining that the Fourth Amendment's particularity requirement requires a "nexus between the items sought and the 'particular place' to be searched"). The warrant authorizes the search of 89 Parkridge, which is owned by Thompson and is described as "a gold/yellow, two-family, wood framed home with a lower front porch on the front and a driveway along the right side." TA-442. This language makes clear that 89 Parkridge is a two-family home—implying that there

5

are two apartments—and it authorizes a search of the entire structure. Moreover, there was probable cause to search both apartments. *See Clark*, 638 F.3d at 94–95 (explaining that "a search warrant for a multiple-occupancy building [must] be supported by a showing of probable cause as to each unit"). Williams told Justice Michalski that "he had been at the target residence of 89 Parkridge . . . in the last 10 days, both the upper and the lower apartments located in that residence [and had] purchased powdered cocaine from Titus Thompson at that residence." TA-3268. Thus, the warrant was neither unsupported by probable cause nor overbroad.[3]

## B. Rule 29 Motions

Under Federal Rule of Criminal Procedure 29, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). We review the denial of a Rule 29 motion *de novo*. *United States v. Gershman*, 31 F.4th 80, 95 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 816 (2023). "[T]o reverse a conviction on appeal, a defendant carries a heavy burden. To prevail, [he] must show that no rational trier of fact could have found all of the elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and citations omitted). "In evaluating a sufficiency challenge, we must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence."

---

[3] In light of this conclusion, we need not address Thompson's alternative argument that the district court erred in concluding that he failed to establish standing to challenge the search of the lower apartment. Furthermore, contrary to Thompson's contention, the fruits of the search need not be suppressed because the warrant clearly authorized a search of the lower apartment, including of any containers that might contain evidence of drug trafficking. *See* TA-442 to -43.

*United States v. Martoma*, 894 F.3d 64, 72 (2d Cir. 2017) (internal quotation marks and citations omitted).

### 1. Cooper's Rule 29 Motion

Cooper contends that there was insufficient evidence to support his conviction for conspiracy to commit firearms offenses. We disagree, for substantially the reasons set forth in the district court's decision and order. *See* CA-1738 to -42. Namely, viewing the evidence in the light most favorable to the government, the testimony at trial firmly established Cooper's role in the conspiracy. Multiple witnesses testified as to how Cooper recruited them to serve as straw purchasers and paid them in drugs for their services. Witnesses also testified to meetings and exchanges that took place at Cooper's residence. These witness accounts were corroborated by the physical evidence recovered from Cooper's residence, which included a stolen firearm, currency, drugs, and drug paraphernalia. Thus, we conclude there was ample evidence to support Cooper's conviction on the firearms conspiracy charge.

### 2. Thompson's Rule 29 Motion

Thompson likewise contends that there was insufficient evidence to sustain his counts of conviction. Again, we disagree, for substantially the reasons set forth in the district court's decision and order. *See* TA-1627 to -30. Thompson primarily attacks the credibility of two government witnesses, Williams and Victoria Orlando ("Orlando"), citing their backgrounds and history of drug use, as well as inconsistencies in their testimony. But as evidenced by the verdicts, the jury credited Williams's and Orlando's testimony. On appeal, we defer to that credibility determination. *Martoma*, 894 F.3d at 72. At trial, Williams testified that Thompson would place orders for specific firearms and provide Williams with money to purchase those firearms. He further testified that he had seen cocaine, marijuana, and K2 at Thompson's

residence. [4]  For her part, Orlando testified about two occasions on which she witnessed Thompson arrive at Williams's residence in Buffalo, inspect firearms, and discuss with Williams the purchase of more firearms.  Additionally, Williams's and Orlando's testimony was corroborated not only by the testimony of other participants in the firearms conspiracy, but also by the physical evidence recovered from 89 Parkridge and introduced at trial: ten firearms from the lower apartment, two firearms from the upper apartment, and ammunition; as well as a kilogram press, scales, cutting agent, and packaging materials.  Thus, we conclude that the evidence was more than sufficient to convict Thompson.

## C. Rule 33 Motions

Under Federal Rule of Criminal Procedure 33, a district court "may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  We review the denial of a Rule 33 motion for abuse of discretion.  *United States v. Vinas*, 910 F.3d 52, 58 (2d Cir. 2018).  In evaluating a Rule 33 motion, "[t]he district court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation."  *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001).  The district court must also "strike a balance between weighing the evidence and credibility of witnesses and not wholly usurping the role of the jury."  *Id.* at 133 (internal quotation marks and alteration omitted).  "The ultimate test on a

---

[4] As Thompson notes, Williams's trial testimony was inconsistent with what Justice Michalski testified Williams had told him at the time of the warrant application.  *Compare* TA-3268 (Justice Michalski's testimony before the district court that Williams stated he had purchased powdered cocaine from Thompson), *with* TA-1081 (Williams's trial testimony where he denied purchasing narcotics, except for K2, from Thompson).  Thompson had the opportunity to point out this inconsistency to the jury, and on appeal, we "defer to . . . the jury's resolution of conflicting testimony."  *United States v. Glenn*, 312 F.3d 58, 64 (2d Cir. 2002) (internal quotation marks and citation omitted).  In any event, both versions of Williams's account lend support to the charge of using and maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1).

Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *Id.* at 134.

### 1. Cooper's Rule 33 Motion

In support of his Rule 33 challenge, Cooper contends that he was deprived of his Sixth Amendment right to a fair trial because the onset of the COVID-19 pandemic rushed jury deliberations, and that the district court abused its discretion in denying his request to question the jury post-verdict. We disagree, for substantially the reasons set forth in the district court's decision and order. *See* CA-1746 to -56. Nothing in the record presents "reasonable grounds" to merit questioning the jury post-verdict. *See United States v. Sun Myung Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983) ("[A] trial court is required to hold a post-trial jury hearing only when reasonable grounds for investigation exist. Reasonable grounds are present when there is clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial of a defendant." (citation omitted)). There is no indication that either the parties or the jury had concerns about the pandemic. For example, neither Thompson nor Cooper brought any motions related to COVID-19 during trial. Moreover, the record suggests that the jurors carefully considered the evidence before rendering a verdict. During deliberations, the jury sent multiple notes to the district court, asking for evidence and to hear testimony read back. At one point, some jurors also requested a smoke break. Nothing here suggests that the jury was rushed. For these reasons, as well as those set out in the district court's decision and order canvassing the state of the pandemic in Buffalo, New York, between

9

March 11, 2020, and March 13, 2020, *see* CA-1751 to -56, we conclude that the district court did not abuse its discretion in denying Cooper's Rule 33 motion.[5]

### 2. Thompson's Rule 33 Motion

In support of his Rule 33 challenge, Thompson: (1) reiterates his arguments from the Rule 29 challenge; and (2) raises the same arguments as in Cooper's Rule 33 challenge. We reject the former argument for the reasons set forth above regarding Thompson's Rule 29 challenge, and the latter for the reasons set forth above regarding Cooper's Rule 33 challenge.

### D. Ineffective Assistance of Counsel

Finally, Thompson argues that he received ineffective assistance from the counsel that represented him before the district court in the pretrial proceedings and at trial.

> When faced with a claim for ineffective assistance of counsel on direct appeal, we may: (1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255; (2) remand the claim to the district court for necessary factfinding; or (3) decide the claim on the record before us.

*United States v. Adams*, 768 F.3d 219, 226 (2d Cir. 2014) (per curiam). Our general policy favors determination of ineffective assistance claims in the context of a § 2255 proceeding rather than on direct appeal, and Thompson offers no compelling reason to deviate from our usual practice. *See United States v. Khedr*, 343 F.3d 96, 100 (2d Cir. 2003) (explaining why § 2255 proceedings are preferred to direct appeals for resolving ineffective assistance claims); *see also Massaro v. United*

---

[5] *Cf. ABKCO Music, Inc. v. Sagan*, 50 F.4th 309, 324–26 (2d Cir. 2022) (in a civil case, rejecting a motion for a new trial premised on the argument that the jury rushed the verdict due to COVID-19, notwithstanding that the trial had taken place in New York City from March 2, 2020, to March 12, 2020, and the record contained explicit statements from the district court and one juror demonstrating concern about the pandemic), *petition for cert. filed*, No. 22-1053 (2023) ; *United States v. Harris*, 51 F.4th 705, 711–13 (7th Cir. 2022) (in a criminal case, finding no plain error in the district court's decision to hold a trial from March 9, 2020, to March 17, 2020, where the record did not suggest the jury was affected by the pandemic), *cert. denied*, 143 S. Ct. 1033 (2023).

*States*, 538 U.S. 500, 504–08 (2003). We therefore dismiss Thompson's ineffective assistance claim without prejudice to the filing of a petition for relief under 28 U.S.C. § 2255.

*     *     *

We have considered Defendants-Appellants' remaining arguments and find them to be without merit. Accordingly, Thompson's appeal is **DISMISSED WITHOUT PREJUDICE** in part, and the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk