**UNITED STATES of America,**
**Appellee,**

v.

**Marian JASS, Kenneth Leight,**
**Defendants–Appellants.**

Nos. 06–4899–cr (L), 06–4951–cr (con).

United States Court of Appeals,
Second Circuit.

June 16, 2009.

Colleen P. Cassidy, Federal Defenders of New York, Inc., Appeals Bureau, New York, NY, for Appellant Marian Jass.

Larry Sheehan, Law Office of Law Sheehan, Esq., Bronx, NY, for Appellant Kenneth Leight.

Marcia S. Cohen, Assistant United States Attorney (John P. Collins, Jr. and Diane Gujarati, Assistant United States Attorneys, on the brief), for Michael J. Garcia, United States Attorney for the Southern District of New York, New York, NY, for Appellee.

PRESENT: Hon. WALKER, Hon. JOSÉ A. CABRANES and Hon. REENA RAGGI, Circuit Judges.

## SUMMARY ORDER

Defendants Marian Jass and Kenneth Leight appeal their judgments of conviction entered after a joint trial at which they were each found guilty on one count of conspiring to transport minors in interstate commerce with the intent that the minors engage in sexual activity, *see* 18 U.S.C. § 371; two counts of transporting a minor across state lines for the purpose of engaging in illegal sexual activity, *see id.* § 2423(a); and one count of enticing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct, *see id.* § 2251(a). In addition, Leight was convicted on two counts of possession of child pornography. *See id.* § 2252A(a)(5)(B). Jass and Leight also appeal their respective sentences of 65 years' and 115 years' imprisonment. We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision.

### 1. *Defendants' Sufficiency Challenges*

Jass and Leight both challenge the sufficiency of the evidence supporting their convictions on Count Two, which charged them with transporting Leight's then-eleven-year-old daughter ("Victim 1") to New Jersey in July 2003 for the purpose of engaging in illegal sexual activity. *See* 18 U.S.C. § 2423(a). Defendants do not challenge the sufficiency of the evidence proving their engagement in the charged sexual activity. They submit only that no rational factfinder could have found that sexual activity, rather than a family vacation, was the dominant purpose of the charged trip. *See United States v. Miller,* 148 F.3d 207, 212–13 (2d Cir.1998) (requiring prosecution to prove such dominant purpose to secure conviction pursuant to § 2423(a)). We review sufficiency claims *de novo,* but we will uphold a jury verdict as long as "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hardwick,* 523 F.3d 94, 100 (2d Cir.2008) (internal quotation marks omitted) (emphasis in original).

In *Miller,* this court explained that when an act has "multiple purposes," the government's burden to prove "dominant purpose" is met if the evidence shows that the desire to engage in sexual activity "predominate[s] over other, less powerful motivations" for defendant's conduct. *United States v. Miller,* 148 F.3d at 212. Like the district court, we conclude that the totality of the trial evidence would have permitted a rational jury to "find that [Jass and Leight] were fairly consumed with the notion of having sexual contact with his minor daughter ... [and] that a day didn't go by when they weren't plotting on how to get to the next time they were going to have sex with her." Trial Tr. at 623–24. With respect to the charged trip to New Jersey, the evidence showed that Leight and Jass prepared for their abuse of Victim 1 on this trip by booking a hotel suite that would provide

them with a private space in which to carry on their molestation and by bringing along medication that would render the child unconscious to facilitate the planned sexual abuse. On such a record, we cannot conclude that no rational jury could have found that defendants' dominant purpose in making the charged interstate trip was the sexual abuse of Victim 1.

### 2. *Leight's Claim of Improper Joinder*

Leight contends that Counts Five and Six, charging him with possession of child pornography, were improperly joined with Counts One through Four, relating to the sexual abuse of his daughter and her friend ("Victim 2"). We review the propriety of joinder of charges *de novo, see United States v. Feyrer,* 333 F.3d 110, 113 (2d Cir.2003), and we identify no error in this case.

▮ Rule 8(a) of the Federal Rules of Criminal Procedure permits charges to be joined in a single indictment where "the offenses ... are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed.R.Crim.P. 8(a). Here, the sexual abuse counts and child pornography counts were clearly of a "similar character" in that all counts involved the sexual exploitation of children. *See United States v. Werner,* 620 F.2d 922, 926–27 (2d Cir.1980) (defining "similar [in] character" to include "resembling in many respects; somewhat alike; having a general likeness" (internal quotation marks omitted)); *see also United States v. Hersh,* 297 F.3d 1233, 1242 (11th Cir.2002) (holding that child molestation and possession of child pornography "plainly represent acts of 'similar character' "). Indeed, there was evidence that Leight used the child pornography in his possession to persuade his minor victims to engage in sexual activity with him, fur-

ther connecting the two offenses. On such a record, we easily conclude that the six counts against Leight were properly joined.

### 3. *Denial of Leight's Severance Motion*

In the alternative to his joinder challenge, Leight argues that the district court erred in denying his motion to sever Counts Five and Six from Counts One through Four pursuant to Fed.R.Crim.P. 14 on the basis of unfair prejudice. A defendant challenging a denial of severance carries an "extremely difficult burden," and we will reverse "only if [he] can show prejudice so severe that his conviction constituted a miscarriage of justice, and that the denial of his motion constituted an abuse of discretion." *United States v. Salameh,* 152 F.3d 88, 115 (2d Cir.1998) (internal quotation marks omitted). Leight cannot meet this rigorous standard. He has shown no prejudice, let alone prejudice severe enough to result in a miscarriage of justice, resulting from the joinder of the charges against him. The district court acted well within its discretion in denying the motion to sever.

### 4. *Leight's Evidentiary Challenges*

#### a. *Post–Arrest Statements*

Leight argues that the district court erred in not holding an evidentiary hearing on his motion to suppress his post-arrest statements. "[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact ... are in question." *United States v. Watson,* 404 F.3d 163, 167 (2d Cir.2005) (internal quotation marks omitted). We review the denial of a request for a suppression hearing for abuse of discretion. *See United States v. Finley,* 245 F.3d 199, 203 (2d Cir.2001).

■ Here, Leight did not allege that arresting officers failed to advise him of his *Miranda* rights; he claimed only that he could not "remember" receiving a *Miranda* warning. The Advice of Rights form signed by Leight at the time of his interrogation, however, conclusively demonstrated that Leight had in fact been informed of and waived his *Miranda* rights. While Leight argued that his waiver may not have been voluntary because he had taken certain over-the-counter and prescription medications that interfered with his ability to think rationally, the district court acted well within its discretion in concluding that an evidentiary hearing on this point was not required because (1) Leight's allegation lacked specificity, *e.g.*, he did not identify the type or quantity of drugs he had taken; and (2) the detailed nature of the statement provided by Leight to the agents belied his claimed inability to think rationally. Under these circumstances, we identify no abuse of discretion in the court's decision not to hold an evidentiary hearing.

### b. *Evidence Seized from Defendants' Residence*

Leight challenges the district court's refusal to suppress certain items seized from defendants' residence that were not mentioned in the authorizing search warrant, namely, a gun, a blender, and two drink mixes. We review the factual findings supporting a district court's denial of a motion to suppress for clear error, viewing the evidence in the light most favorable to the government, and we review the court's legal conclusions *de novo*. *See United States v. Rommy*, 506 F.3d 108, 128 (2d Cir.2007).

■ The law permits law enforcement officers executing a valid search warrant for certain items to seize other incriminating evidence that they come across in the course of their search if it "is immediately apparent to [them] that they have evidence before them." *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Relying on an affidavit by one of the searching agents, the district court concluded that the evidentiary value of the blender and drink mixes was immediately apparent to the agents because Victim 2 had told the affiant that Leight had made her a blended drink in the hotel room from two liquids, one pink and one white. We identify no error, much less clear error, in this finding.

■ As to the gun, although the district court found that the evidentiary value of this item was not apparent to the agent at the time of the search, it upheld the weapon's seizure on the ground that, with Jass and Leight under arrest, it would have been irresponsible to leave an unsecured firearm in a house occupied only by two minor children. We need not here determine whether such a protective seizure was supported by law because, even if it were not, any error in the district court's failure to suppress the gun was rendered indisputably harmless by the overwhelming trial evidence of Leight's guilt. *See* Fed.R.Crim.P. 52(a) ("Any error ... that does not affect substantial rights must be disregarded."); *United States v. Quinones*, 511 F.3d 289, 313 (2d Cir.2007). This evidence included the direct testimony of two victims, physical exhibits corroborating their accounts in important respects, Leight's post-arrest admissions, and the vast amount of child pornography found on the seized computer.

### c. *Other Bad Act Evidence*

■ Leight asserts that the district court erred in allowing the jury to hear about a range of other bad acts, specifically, his (1) history of abusing his daughter, (2) attempted abuse of his daughter's

friend, (3) possession of a videotape containing child pornography, (4) use of child pornography to convince his victims that sexual activity between adults and children was normal, and (5) serving alcohol to his minor victims. We review a district court's evidentiary rulings for abuse of discretion, and we identify none in this case. *See United States v. Thompson*, 528 F.3d 110, 120 (2d Cir.2008).

The challenged evidence was, in most instances, relevant proof of the crimes charged and, therefore, admissible without reference to any limitations on "other act" evidence in Fed.R.Evid. 404(b). Alternatively, the evidence was admissible because it was "inextricably intertwined with the evidence regarding the charged offense, or . . . necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir.2000). To the extent the district court specifically instructed the jury that some of the challenged evidence could be considered only in evaluating Leight's knowledge and intent, this satisfactorily ensured that the jury did not use the evidence as proof of Leight's propensity to commit crime as proscribed by Rule 404(b). *See United States v. Guang*, 511 F.3d 110, 121 (2d Cir.2007) ("The Second Circuit's 'inclusionary approach' to the admission of other act evidence allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity." (internal quotation marks omitted)).

On such a record, we conclude that the district court's evidentiary rulings fell well within its discretion.

5. *Jass's Challenge to the Exclusion of Evidence*

Jass submits that the district court erred in refusing to allow her to elicit from Victim 2 evidence that (1) on a New Jersey trip with the defendants, Jass had tried to protect Victim 2 from sex with Leight, and (2) Leight had responded by telling Jass to "shut up." Jass contends that the statements were not inadmissible hearsay because they were not offered for the truth of the matter asserted. *See* Fed.R.Evid. 801. Alternatively, Jass argues that, even if the statements were hearsay, they were admissible to demonstrate that her state of mind was not to engage in sexual activities with the child. *See id.* 803(3). We review the court's decision to exclude the testimony for abuse of discretion. *See United States v. Thompson*, 528 F.3d at 120.

At the outset, we note that the district court did allow defendants to elicit that, in New Jersey, Jass and Leight argued about having sex with Victim 2. At a sidebar conference, the prosecutor proffered that the argument was limited to whether Leight should have full sexual intercourse with the child. Jass did not proffer otherwise as to the argument. Moreover, she proffered no expectation that Victim 2 would, in fact, testify that Jass had attempted to protect her from *all* sexual activity. Certainly, the district court would have had no reason to think such testimony might be forthcoming given the child's detailed account of the abuse engaged in by Jass as well as Leight on the New Jersey trip. On this record, we conclude that the district court did not deprive Jass of the right to present a defense but, rather, that the court acted within its discretion in allowing the nontestifying defendants to elicit the fact and general subject matter of their argument in the New Jersey hotel room while precluding their further examination into the exact words spoken.

We further note that, even if we were to identify error, we would conclude that it was harmless beyond a reasonable doubt given Victim 2's testimony of sexual abuse by both Jass and Leight, which was cor-

roborated by Victim 1's testimony of separate sexual abuse by Jass and Leight over a period of many years. *See United States v. Dhinsa,* 243 F.3d 635, 649 (2d Cir.2001); *see also United States v. Reifler,* 446 F.3d 65, 87 (2d Cir.2006) ("In order to disregard an error of constitutional dimension, we must be convinced that the error was harmless beyond a reasonable doubt.").

### 6. *Defendants' Sentencing Challenges*

#### a. *Jass's Procedural Challenges*

Jass identifies three procedural errors in her sentence, one of which is addressed in our published opinion in this case, *see United States v. Jass,* 569 F.3d 47 (2d Cir.2009). Her two remaining contentions are that the district court miscalculated her Sentencing Guidelines range by reference to (1) U.S.S.G. §§ 5G2.1(b)(2) and 2A3.1(b)(3)(A) because it mistakenly found that defendants' victims were in her "custody, care, or supervisory control"; and (2) U.S.S.G. § 2A3.1(b)(1) because it mistakenly found that defendants had facilitated their sexual abuse of Victim 1 through the administration of a substance that "render[ed the child] unconscious," *see* 18 U.S.C. § 2241(b)(1).

We review the district court's factual finding regarding Jass's custody and supervisory control over the child victims for clear error, and we identify none. *See United States v. Jones,* 531 F.3d at 173. Section 2A3.1(b)(3)(A) "is intended to have broad application and is to be applied whenever the victim is entrusted to the defendant, whether temporarily or permanently." U.S.S.G. § 2A3.1 app. n. 2 (2003). With respect to Victim 2, the child required permission from her mother to go on an overnight trip accompanied by a single adult, Jass. In these circumstances, the district court could reasonably conclude that Victim 2 was entrusted to Jass's care during the trip. With respect to Vic-

tim 1, Jass's long-term status as the live-in girlfriend of the child's father permitted the district court to find that her status was sufficiently akin to that of a stepmother to support a finding of some degree of custody and supervisory control over the child even if the father exercised primary custody and control. *See id.* ("In determining whether to apply this enhancement, the court should look to the actual relationship that existed between the defendant and the victim and not simply to the legal status of the defendant-victim relationship.").

Jass's challenge to the application of the § 2A3.1 (b)(1) enhancement was not raised before the district court and therefore has been waived. *See United States v. Eberhard,* 525 F.3d 175, 179 (2d Cir.2008). Because Jass did not object below to the Presentence Investigation Report's statement that she and Leight had administered a drug to Victim 1, she cannot do so now. *See id.; United States v. Triestman,* 178 F.3d 624, 633 (2d Cir.1999); *see also* Fed.R.Crim.P. 32(i)(3)(A) ("At sentencing, the court ... may accept any undisputed portion of the presentence report as a finding of fact.").

Accordingly, we identify no procedural error in Jass's sentence.

#### b. *Jass's Substantive Challenge*

Jass asserts that her 65–year sentence is substantively unreasonable because it is greater than necessary to achieve the statutory goals of sentencing described in 18 U.S.C. § 3553(a). As we have explained, "we will not substitute our own judgment for the district court's on the question of what is sufficient to meet the § 3553(a) considerations in any particular case." *United States v. Cavera,* 550 F.3d 180, 189 (2d Cir.2008) (*en banc*). We will only set aside a sentence as substan-

tively unreasonable where, upon review of the totality of the evidence, "the trial court's decision cannot be located within the range of permissible decisions." *Id.* at 189 (internal quotation marks omitted); *see United States v. Jones,* 531 F.3d at 170. Here, the district court carefully considered all the statutory goals of sentencing, and determined that 18 U.S.C. § 3553(a) required a severe sentence because, although Leight had directed some of their joint criminal activities, Jass "was a willing participant ... in all ways imaginable, from engaging in sexual activity with these minor children, to grooming them, getting them to the event and worse." Sentencing Tr. at 53 (October 10, 2006). Considering the totality of the circumstances, we conclude that the court did not abuse its discretion in imposing a sentence of 65 years' imprisonment.

### 7. *Leight's Sentencing Challenge*

 Leight does not allege procedural error in his sentence. He argues only that a 115-year term of incarceration is substantively unreasonable in light of the fact that he has no criminal record. Leight's 115-year sentence falls within his Guidelines range, calculated based on the lowest Criminal History category of I. Although we do not presume a Guidelines sentence to be reasonable, we have recognized that " 'in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances.' " *United States v. Friedberg,* 558 F.3d 131, 137 (2d Cir.2009) (quoting *United States v. Eberhard,* 525 F.3d 175, 179 (2d Cir.2008)); *see also Rita v. United States,* 551 U.S. 338, 127 S.Ct. 2456, 2467, 168 L.Ed.2d 203 (2007) ("[W]here [the sentencing] judge and [Sentencing] Commis-

sion *both* determine that the Guidelines sentence[ ] is an appropriate sentence for the case at hand, that sentence likely reflects the § 3553(a) factors." (emphasis in original)). Leight's sentence not only fell within the Sentencing Guidelines range, it reasonably reflected the seriousness of his particular crime, *see* 18 U.S.C. § 3553(a), which, as the sentencing judge who presided over his trial observed, "destroy[ed] lives," including that of his own daughter, Sentencing Tr. at 21 (Oct. 10, 2006). Under the totality of the circumstances, we conclude that the district court acted within its discretion in imposing, in effect, a sentence of life imprisonment. *See United States v. Cavera,* 550 F.3d at 190.

Accordingly, for the reasons stated in this order as well as in the contemporaneous published opinion, the judgments of conviction are AFFIRMED.