**UNITED STATES of America**

v.

**Paul F. GUZOCK, Defendant.**

**No. 12–CR–353 (S)(M).**

United States District Court,
W.D. New York.

Signed Feb. 11, 2014.

Entered Feb. 13, 2014.

viewed the recommendations de novo, after considering the Objections and the parties' submissions, see 28 U.S.C. § 636(b)(1); Fed.R.Crim.P. 59(b); Local Rule 72.3(a), this Court concurs with the findings and recommendations contained in the Report, Recommendation, and Order. They will therefore be accepted over objection.

IT HEREBY IS ORDERED, that the 43 Report, Recommendation, and Order is ACCEPTED. FURTHER, that the 44 Objections are DENIED. FURTHER, that the 26 Motion to Suppress is DENIED, consistent with the Magistrate Judge's recommendations.

SO ORDERED.

## REPORT, RECOMMENDATION and ORDER

JEREMIAH J. McCARTHY, United States Magistrate Judge.

John McRae Alsup, U.S. Attorney's Office, Buffalo, NY, for United States of America.

Brian P. Comerford, Federal Public Defender, Buffalo, NY, for Defendant.

## ORDER

WILLIAM M. SKRETNY, Chief Judge.

Presently before this Court are Objections to the Magistrate Judge's Report, Recommendation, and Order. Having re-

Defendant Paul Guzock is charged in a three-count Indictment [14] [1] with manufacturing marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1), and with possession of firearms in furtherance of drug trafficking crimes, in violation of 18 U.S.C. § 924(c)(1). [2] Before me are defendant's motions to suppress physical evidence and statements [26], and the government's cross-motion for reciprocal discovery [27], p. 17. [3]

1. Bracketed references are to CM–ECF docket entries.

2. The Indictment [14] also contains forfeiture allegations.

3. By e-mail dated November 12, 2013 defendant's counsel advised my chambers that "other than suppression of statements and physical evidence, I don't know that Judge McCarthy has to resolve anything else. We are still seeking additional discovery concerning the informant(s)—however that seems connected with the motion to suppress the physical evidence. Anything else would presumably be dealt with before [the trial judge] if this matter proceeds to trial." Based upon these representations, I will deem the remaining aspects of defendant's pretrial motion withdrawn as moot, without prejudice to renewal.

This case was referred to me by Hon. William M. Skretny for supervision of all pretrial proceedings [15]. Oral argument was held on October 8, 2013, and thereafter I permitted the parties to make additional submissions concerning defendant's motion to suppress statements [36, 39, 42]. For the following reasons, the government's cross-motion for reciprocal discovery is granted, and I recommend that defendant's motions to suppress physical evidence and statements be denied.

## BACKGROUND

The charges in the case arise from a search warrant ( [27–1], p. 1 of 10) executed at the defendant's residence located at 2322 Drum Road, Hartland, New York, on July 18, 2012. Comerford Affirmation [26], ¶ 3. The search warrant, issued by Hartland Town Court Justice Joanne L. Sullivan on July 17, 2012, was supported by the joint Affidavit of Niagara County Sheriff's Department Investigator Daniel J. Douglas and United States Border Patrol Senior Patrol Agent Elias Degasperi. [26–1], pp. 2–5 of 10.

As set forth in their Affidavit, a two week investigation "determined that [an unknown person] does store and grow quantities of Marihuana at the premises at 2322 [Drum Road]". *Id.*, p. 3 of 10. The investigation began when they were contacted by Supervisory Air Interdiction Agent Mark Diss, a pilot with the United States Office of Air and Marine, who reported that he "located approximately 10 to 15 marihuana plants in pots growing approximately 100 feet to the northwest" of 2322 Drum Road and another "40 to 50 live marihuana plants growing a few hundred feet in a northwest direction behind the residence." [26–1]. *Id.*, ¶ 1(A).[4] A

July 11, 2012 flyover of the parcel conducted by Air Interdiction Agent James Pridgen confirmed that the plants were still in these same locations. *Id.*, ¶ 1(B). According to Agent Pridgen, the marijuana plants he observed were approximately 4 to 5 feet high, in direct view of the residence, and appeared consistent with plants started in an indoor grow. *Id.*, ¶ 1(E).

Although Investigator Douglas and Agent Degasperi indicated that the normal electrical usage for a residence is usually around 700–800 kilowatt hours per month, the account statements of the electrical usage at 2322 Drum Road revealed that from December 29, 2011 to March 29, 2012, the total kilowatt usage was 3,677 kilowatt hours, and spiked to 5,816 kilowatt hours from March 29, 2012 to June 28, 2012. *Id.*, ¶ 1(E).[5] According to Investigator Douglas and Agent Degasperi, it is "[a] common practice ... to start plants growing indoors before Memorial Day and then to transfer them to an indoor location to minimize risk of detection and to lessen resources used in growing", and that "[a] spike in usage around April would be consistent" with this practice. *Id.*

The warrant authorized a search of "the residence, outbuildings and property surrounding the buildings located at 2322 [Drum Road] ... for the following property: Marihuana ... and any documents, written papers, cell phones, articles, and ledgers that tend to show the above party(s) is in possession of and is growing said marijuana at this premises, and any papers, bills, or monies that tend to show the scope of the illicit drug enterprise and who has control over said premises." [26–1], p. 1 of 10.

---

4. The search warrant attached a sworn statement from Agent Diss. [26–1], p. 6 of 10.

5. The search warrant attached the electrical usage history for 2322 Drum Road. [26–1], p. 9 of 10.

During the execution of the search warrant on July 18, 2012, defendant was arrested and made statements. Although defendant's motion to suppress these statements was not initially accompanied by his affidavit or declaration, with my permission (October 8, 2013 Text Order [37] ), he submitted a declaration [36] stating that during the execution of the search warrant he recalls being "knocked to the ground and restrained", and that when he asked the agents if he had to go to jail, "they responded that they did not know, and that they wanted to talk to me". *Id.*, p. 1 of 3, third unnumbered paragraph. He was then taken to the kitchen where he was questioned by two agents. *Id.* Defendant does "not specifically recall being advised of my *Miranda* rights" and does "not recall waiving those rights . . . prior to or during this questioning." *Id.*, p. 2 of 3, fourth unnumbered paragraph. According to defendant, "everything was moving very fast" and he "was agitated, upset, and not thinking clearly." *Id.*, fifth unnumbered paragraph. He states that he suffers from Post–Traumatic Stress Disorder, which causes him to be "startled very easily" and to have "difficulty thinking clearly in stressful situations." *Id.*, p. 1 of 3, second unnumbered paragraph.

After reviewing defendant's declaration [36] and the government's response [39], I permitted the parties to "submit case authority on whether a defendant is entitled to a suppression hearing where they are unable to recall whether they were advised of their *Miranda* rights or waived those rights." October 29, 2013 Text Order [40]. Conditioned on my review of these submissions, I tentatively scheduled an evidentia-

ry hearing. *Id.* Although defendant did not make any additional submission, the government submitted an "Amended Response to Defendant's Declaration and Motion for Reconsideration" [42],[6] as well as an affidavit from Investigator Douglas [42–1], stating that he Mirandized defendant and obtained a verbal waiver from him before proceeding with any questioning. *Id.*, ¶ 4.

## ANALYSIS

### A. Defendant's Motion to Suppress Physical Evidence

While conceding that "there may have been sufficient probable cause to search the grounds at 2322 Drum Road", defendant disputes whether there was probable cause to support a search of his "residence and outbuildings". Comerford Affirmation [26], ¶¶ 5–6, 8. However, since defendant has only moved to suppress the physical evidence seized from his residence (*id.*, ¶ 3), I need not resolve whether there was probable cause to search the outbuildings.

In response, the government argues that "the aerial surveillance of mature marijuana plants outdoors, coupled with the investigation of the electrical records and the affiants' own training an experience investigating marijuana growing operations, provided sufficient information . . . to find that there existed a 'fair probability' that marijuana, or evidence of a marijuana growing operation, would be found inside the defendant's . . . residence." Government's Response [27], p. 5. Alternatively, the government argues even if probable cause was lacking, suppression is not war-

---

**6.** Although defendant's motion for reconsideration appears to be premised on the fact that I scheduled an evidentiary hearing on defendant's motion to suppress statements, I did so only tentatively. October 29, 2013 Text Order [40]. After I reviewed the government's sup-

plemental submission [42], my chambers notified the parties on November 12, 2013 by e-mail that the hearing was cancelled, and that I would be taking defendant's pretrial motion [26] under advisement.

ranted under the good faith exception of *United States v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *Id.,* pp. 5–6.

### 1. Probable Cause

 In issuing a search warrant "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Id.* at 236, 103 S.Ct. 2317. "'[C]ourts should not invalidate … warrants by interpreting affidavits in a hypertechnical, rather than a common sense, manner.'" *Id.* "[S]o long as the magistrate had a 'substantial basis for … concluding' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Id.* Probable cause "does not demand certainty but only a *fair probability'* that contraband or evidence of a crime will be found." *United States v. Gaskin,* 364 F.3d 438, 457 (2d Cir.2004), *cert. denied,* 544 U.S. 990, 125 S.Ct. 1878, 161 L.Ed.2d 751 (2005) (emphasis added).

"A showing of nexus does not require direct evidence and may be based on reasonable inference from the facts presented based on common sense and experience". *United States v. Singh,* 390 F.3d 168, 182 (2d Cir.2004). However, standing alone, "the mere fact that marijuana is growing near a residence does not connect the mar-

ijuana to that residence". *United States v. Ali,* 2006 WL 1644361, *3 (N.D.Ohio 2006).

In addition to the proximity of the marijuana plants to the residence, the supporting affidavit identified periodic high levels of electrical usage at 2322 Drum Road. [26–1], ¶ 1(E). Justice Sullivan was entitled to rely upon the affiants' observations that "[o]ften, significantly higher electric usage is observed in a residence operating a marihuana grow" and that the pattern of electrical usage at the premises corresponded to the "common practice" of growing marijuana plants indoors before Memorial Day and then transferring them outdoors. *Id.* Douglas/Degasperi Affidavit [26–1], ¶ 1(E). *See United States v. Fama,* 758 F.2d 834, 838 (2d Cir.1985) ("an agent's expert opinion is an important factor to be considered by the judge reviewing a warrant application").

Defendant argues that because the marijuana plants were growing outside, there was nothing to suggest that marijuana was being stored in the residence. Comerford Affirmation [26], ¶ 6. However, the search warrant was not limited to the seizure of marijuana. It also gave permission to seize documentation tending to show that a marijuana grow operation was occurring at the premises, evidence which logically would have remained in the residence notwithstanding the transfer of the plants outdoors.

Drawing upon the reference to an "illicit drug enterprise" contained in the description of items authorized to be seized, defendant also argues that there was no probable cause to believe that he was operating a drug enterprise. Comerford Affirmation [26], ¶ 7. I agree with defendant that the warrant application failed to establish probable cause that anything other than a marijuana grow operation was occurring at the premises. Nevertheless, it is evident that the warrant's authorization

to search for items concerning the "scope of the illicit drug enterprise" was intended to reference the marijuana grow operation occurring at the premises, not a larger distribution enterprise. In any event, even if the reference to an illicit drug enterprise in the description of items authorized to be seized required probable cause to believe that distribution of marijuana was also occurring at the premises, the affidavit identified up to approximately 65 marijuana plants on the property. Douglas/Degasperi Affidavit [26–1], ¶ 1(A). "A large drug quantity such as this may "establish[ ] an intent to redistribute"." *United States v. Hawkins*, 547 F.3d 66, 77 (2d Cir.2008). *See also United States v. Rojas*, 617 F.3d 669, 676 (2d Cir.2010) ("The jury could draw a reasonable inference from the quantity of drugs ... that they were not all for individual consumption").

### 2. *Leon* Good–Faith Exception

█ Even if it were to be determined that the search of the residence was not supported by probable cause, I agree with the government that the *Leon* good-faith exception would negate any application of the exclusionary rule. Government's Response [27], pp. 5–6. Suppression is to be the "last resort, not [the court's] first impulse". *Herring v. United States*, 555 U.S. 135, 140, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). "Thus, in *United States v. Leon*, the Supreme Court recognized an exception to the exclusionary rule for 'evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant.'" *United States v. Clark*, 638 F.3d 89, 99 (2d Cir.2011). "The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance' on an invalidated warrant .... In assessing whether it has carried that burden, we are mindful that ... that most searches conducted pursuant to a warrant would likely fall within its protection." *Id.* at 100. "[A]gainst this presumption of reasonableness", four circumstances have been identified where the good faith presumption of reasonableness will not apply to preserve evidence from suppression: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *Id.*

At oral argument, defendant's counsel relied on the third exception, arguing that the warrant for the residence and outbuilding was so lacking in probable cause as to render reliance upon it unreasonable. This exception "frequently arises when affidavits are bare bones, *i.e.*, totally devoid of factual circumstances to support conclusory allegations". *Clark*, 638 F.3d at 103. Here, however, the search warrant application is far from devoid of factual circumstances supporting a nexus between the marijuana observed on the property and the residence. *See United States v. Carpenter*, 360 F.3d 591, 594, 596 (6th Cir.), *cert. denied*, 543 U.S. 851, 125 S.Ct. 261, 160 L.Ed.2d 84 (2004) (Although the fact that marijuana was growing "near" a residence and a road connected the residence to the marijuana did not establish probable cause to search the residence, these facts created a sufficient nexus to support an officer's good-faith belief in the warrant's validity). Therefore, I recommend that defendant's motion to suppress physical evidence seized from the residence be denied.

### B. Defendant's Motion to Suppress Statements

█ Defendant's motion to suppress statements seeks "a hearing ... to deter-

mine whether [he] fully understood his rights and whether he voluntarily waived his rights prior to answering the agents' questions." Comerford Affirmation [26], ¶ 10.[7] The government responds that "defendant's Declaration, which contains the very same vague and ambiguous assertions regarding *Miranda* warnings that have failed to withstand analysis in the courts of this Circuit, generates no contested issues of fact." Government's Amended Response [42], p. 2. I agree with the government.

█ Generally, an evidentiary hearing on a motion to suppress is required "if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact [exist]". *United States v. Watson,* 404 F.3d 163, 167 (2d Cir.2005). Therefore, "the Court has discretion to deny a hearing where . . . the defendant's papers fail to create a dispute over a material fact". *United States v. Carter,* 2012 WL 4721117, *2 (W.D.N.Y.) (Schroeder, M.J.), *adopted* 2012 WL 4713900 (W.D.N.Y.2012) (Arcara, J.) (*citing United States v. Caming,* 968 F.2d 232, 236 (2d Cir.1992)).

Although defendant's motion to suppress appears to be premised on the voluntariness of his *Miranda* waiver (Comerford affirmation [26], ¶ 10), his declaration [36] states only that he is unable to recall if he received *Miranda* warnings or waived these rights prior to questioning. *Id.,* p. 2

of 3, unnumbered fourth paragraph. By contrast, Investigator Douglas states under oath that he Mirandized defendant, obtained a verbal acknowledgment that he understood these rights, and obtained a verbal waiver of these rights before proceeding with his questioning. Douglas affidavit [42–1], ¶ 4.

While some cases hold that a defendant's inability to recall whether *Miranda* warnings were provided justifies a hearing,[8] the weight of authority is to the contrary. *See United States v. Jass,* 331 Fed.Appx. 850, 855 (2d Cir.2009) (Summary Order), *cert. denied,* 558 U.S. 1159, 130 S.Ct. 1149, 175 L.Ed.2d 992 (2010), *cert. denied,* 559 U.S. 1087, 130 S.Ct. 2128, 176 L.Ed.2d 757 (2010) (evidentiary hearing not warranted where the defendant "did not allege that arresting officers failed to advise him of his *Miranda* rights; he claimed only that he could not 'remember' receiving a *Miranda* warning"); *United States v. Miles,* 2012 WL 4178274, *6 (S.D.N.Y.2012) ("failing to recall certain conversations with law enforcement does not give rise to a factual dispute, particularly where the Government supplies undisputed written confirmation of Defendant's consent"); *United States v. Kuznetsov,* 442 F.Supp.2d 102, 111 (S.D.N.Y.2006) ("Defendant does not state that he was not given *Miranda* warnings. Instead, he states . . . that '. . . . [he had] no recollection of what [he] now know[s] to be [his] *Miranda* rights.' . . . This one sentence in Defendant's declaration is not

---

7. Although defendant's counsel states that he has "reviewed a recording of the execution of the search warrant", which shows that defendant was "very upset and agitated" (Comerford Affirmation [26], ¶ 10), neither party has made this recording part of the record.

8. *See, e.g., United States v. Cortez,* 1995 WL 422029, *2 (S.D.N.Y.1995) (where the government submitted admissible evidence that *Miranda* warnings were provided, defendant's

"statement that she does not recall receiving warnings, since it is made on personal knowledge, constitutes the equivalent of a denial" sufficient to warrant a hearing); *United States v. Larranga Lopez,* 2006 WL 1307963, *4 (E.D.N.Y.2006) (granting a hearing where the defendant did not remember whether he was given *Miranda* warnings and the government did not offer any evidence to support its allegation that the warnings were provided).

sufficiently specific, detailed or nonconjectural and therefore does not raise a contested issue of fact requiring an evidentiary hearing"); *United States v. Jimenez*, 2011 WL 308401, *6 (S.D.N.Y.2011); *United States v. Giamela*, 2005 WL 1423332, *1–2 (S.D.N.Y.2005); *United States v. Arthur*, 2002 WL 523254, *5 (S.D.N.Y.2002). *See also United States v. Love*, 859 F.Supp. 725, 735 (S.D.N.Y.1994), *aff'd*, 41 F.3d 1501 (2d Cir.1994) and 100 F.3d 942 (2d Cir.1996), *cert. denied*, 519 U.S. 951, 117 S.Ct. 364, 136 L.Ed.2d 255 (1996) ("Love's inability to recollect whether he was informed of his *Miranda* rights does not require suppression of his post-arrest statements").

Therefore, I recommend that defendant's motion to suppress statements be denied without an evidentiary hearing.

## C. Government's Cross–Motion for Reciprocal Discovery

The government moves for reciprocal discovery pursuant to Fed.R.Crim.P. ("Rule") 16(b). Government's Response [27], p. 17. Defendant has not opposed this request. Therefore, the government's motion is granted. "Defendant shall provide such discovery, if any, not later than 30 days prior to trial or such other date as the District Judge may direct." *United States v. Sikut*, 488 F.Supp.2d 291, 304–05 (W.D.N.Y.2007) (Foschio, M.J./Arcara, J.).

## CONCLUSION

For these reasons, the government's cross-motion for reciprocal discovery (government's Response [27], p. 17) is granted, and I recommend that defendant's motions to suppress physical evidence (Comerford affirmation [26], ¶¶ 3–8) and statements (*id.*, ¶¶ 9–10) be denied.

Unless otherwise ordered by Judge Skretny, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by December 20, 2013 (applying the time frames set forth in Rules 45(a)(1)(C), 45(c), and 59(b)(2)). Any requests for extension of this deadline must be made to Judge Skretny. A part who "fails to object timely ... waives any right to further judicial review of [this] decision." *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir.1988); *Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. *Paterson–Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990–91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 58.2(a)(3) may result in the district judge's refusal to consider the objection.

**SO ORDERED.**

DATED: December 3, 2013.