24-2180 (L)
*United States v. Silva*

# In the
# United States Court of Appeals
# for the Second Circuit

---

August Term 2024
Argued: February 11, 2025
Decided: July 24, 2025

Nos. 24-2180 (L), 24-2182 (Con)

---

UNITED STATES OF AMERICA,
*Appellant*,

v.

BRUCE SILVA,
*Defendant-Appellee.*[*]

---

Appeal from the United States District Court
for the Southern District of New York

---

Before: JACOBS, MENASHI, AND PÉREZ, *Circuit Judges*.

On appeal from a judgment of the United States District Court for the Southern District of New York (Gardephe, *J.*).

The government appeals a decision of the district court suppressing evidence obtained from Defendant-Appellee Bruce Silva's cell phone pursuant to a search warrant. Silva is detained pending his criminal trial, with the proceedings below stayed until we decide this appeal.

New York City Police Department detective Joseph Boyer's affidavit ("Boyer Affidavit" or "Affidavit") in support of the warrant application set forth

---

[*] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

probable cause to search Silva's cell phone. In granting Silva's motion to suppress, the district court misapprehended the probable-cause standard in two respects. First, a warrant may issue where there is probable cause to believe that the place to be searched contains evidence of a crime, regardless of whether there is probable cause indicating that the target of the investigation *used* the property in furtherance of the criminal conduct. Second, while a law-enforcement affiant's claim to expertise with a particular category of crime may not, standing alone, support the requisite linkage between the alleged crime and the place to be searched, the Boyer Affidavit supplied other independent factual allegations tending to corroborate probable cause to search Silva's cell phone. The Affidavit included a confidential informant's statement that Silva committed financial and other crimes as a member of the Dub City street gang, which might reasonably suggest his electronic devices would contain relevant communications and information. In addition, the Boyer Affidavit averred that the cell phone was the only device found on Silva's person upon his arrest. These factual statements and Boyer's claim of expertise with gang-related crimes together established the requisite nexus between Silva's alleged crimes and his cell phone.

Finally, the warrant application was not so bare bones that the law enforcement officers who conducted the search could not in good faith rely upon the magistrate judge's decision to issue the warrant. For all these reasons, we vacate and remand the district court's suppression order.

---

JACOB R. FIDDELMAN (Michael R. Herman, Matthew J. King, Danielle R. Sassoon, *on the briefs*), Assistant United States Attorneys, of Counsel, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY, *for Appellant*.

FLORIAN MIEDEL, Miedel & Mysliwiec LLP, New York, NY, *for Defendant-Appellee*.

Douglas R. Jensen, Claire Blumenthal Buck, Sher Tremonte LLP, New York, NY, *for Amicus Curiae New*

2

*York Council of Defense Lawyers, in support of Defendant-Appellee.*

Richard D. Willstatter, National Association for Criminal Defense Lawyers, White Plains, NY, Adeel Bashir, National Association for Criminal Defense Lawyers, Tampa, FL, Stephen N. Preziosi, New York State Association of Criminal Defense Lawyers, New York, NY, *for Amici Curiae National Association for Criminal Defense Lawyers and New York State Association of Criminal Defense Lawyers, in support of Defendant-Appellee.*

MYRNA PÉREZ, *Circuit Judge*:

This interlocutory appeal concerns the district court's decision to grant Defendant-Appellee Bruce Silva's motion to suppress evidence from his Apple iPhone ("cell phone") obtained pursuant to a warrant. Silva awaits trial on various firearms, racketeering-conspiracy, and wire-fraud charges in connection with his alleged participation in the Dub City street gang ("Dub City"). The parties ask us chiefly to decide under what circumstances, in a warrant application, an affiant's claim of expertise regarding the type of crimes the target of the investigation allegedly committed can support the requisite linkage between the purported crimes and the place to be searched.

We vacate and remand the decision below. Given probable cause to believe that Silva committed the crimes the warrant application described, a search

3

warrant for his cell phone could properly issue in this instance. The warrant application identified particular attributes of the alleged criminal conduct that, in combination with the affiant's asserted expertise with similar activities, supported a reasonable inference that Silva's cell phone would contain relevant evidence. In addition, in executing the search in this case, law enforcement officers relied on the issued warrant in good faith.

## BACKGROUND

The government filed a sealed criminal complaint in October 2021 charging Silva with possession of ammunition following a felony conviction for violating 18 U.S.C. § 922(g)(1), in connection with an alleged shooting in August 2019. *See* Indictment, ECF No. 10, *United States v. Silva*, No. 22-CR-347 (S.D.N.Y. June 21, 2022) (the "2022 Indictment") (subsequent federal grand-jury indictment on the same charge). In December 2021, Silva purportedly failed to appear for a case-status conference in a state-court proceeding for the commission of that same shooting, at which time the government intended to arrest him for the federal charge. Approximately four months later, members of the U.S. Marshals Service successfully apprehended him, at which point the government seized from his

4

person a cell phone, along with a forged driver's license and a debit card, both in the name of "Carlos Silva."

The government applied for a warrant to search Silva's cell phone. In support, it submitted an affidavit from New York City Police Department detective Joseph Boyer (the "Boyer Affidavit" or "Affidavit"). Boyer averred based on his "conversations with a confidential informant" that Silva was a member of Dub City, which allegedly operates in the Bronx. App'x 56 (Boyer Aff. ¶¶ 7–12). Boyer set forth the facts recounted above, along with the government's case for probable cause to believe that Silva had committed various firearms, racketeering-conspiracy, and wire-fraud offenses.

The Affidavit then identified the purported link between the alleged crimes and the cell phone. Boyer stated that he "ha[s] participated in numerous gang and homicide investigations that have involved, amongst other things, executing search warrants, including warrants involving electronic evidence[,] conversations and drug records, and the retrieval and analysis of cellphone and social media data." *Id*. at 54 (Boyer Aff. ¶ 1). He averred that "[t]hrough [his] training, education, and experience, [he] ha[s] become familiar with the manner in which violent crimes are planned and executed," "the way gangs operate," and

5

"the manner in which gang members and individuals engaged in violent crime use" cell phones "in connection with such activity." *Id*. He asserted that individuals such as Silva "often use" their cell phones to "arrange and coordinate their illicit activities"; "often have" inculpatory "photographs and videos" of "the tools and proceeds of their criminal activities (such as firearms and cash proceeds)" on such devices; and "frequently use cellular devices to coordinate their flight and evade law enforcement." *Id*. at 58–59 (Boyer Aff. ¶ 13). The Affidavit concluded that "there is probable cause to believe that" Silva's cell phone "contains evidence of [his] participation [in] Dub City," his commission of the offenses described, "his flight from justice" following his failure to appear at the state-court proceeding, and "his consciousness of guilt for the August 2019 shooting." *Id*. at 59 (Boyer Aff. ¶¶ 13–14).

A magistrate judge approved the requested warrant. The warrant authorized a search for certain categories of information related to the alleged crimes stored in specific places on Silva's cell phone. Law enforcement officers subsequently executed the search.

In April 2023, a federal grand jury returned an additional indictment against Silva, along with nine co-defendants. *See* Indictment, ECF No. 1, *United States v.*

6

*Silva*, No. 23-CR-204 (S.D.N.Y. Apr. 18, 2023) (the "2023 Indictment"). The 2023 Indictment charged Silva with nine total counts, including for racketeering conspiracy; assault with a dangerous weapon and attempted murder in aid of racketeering in connection with three shootings (including the August 2019 shooting); the use, brandishing, and discharge of a firearm in furtherance of crimes of violence; conspiracy to distribute and possess with intent to distribute fentanyl, heroin, oxycodone, cocaine base, and marijuana; and possession of a firearm in furtherance of a drug-trafficking crime.

## I.    Procedural History

The district court granted the government's motion to join the proceedings associated with the 2022 and 2023 Indictments. Silva then moved, ahead of his criminal trial, to suppress evidence obtained from his cell phone on the grounds that the warrant authorizing its search was not supported by probable cause.

The district court agreed. It concluded that the warrant application set forth sufficient probable cause to believe that Silva is a member of Dub City and participated in three gang-related shootings, though not that he had participated in the financial scams alleged. *United States v. Silva*, No. 22-CR.-347, 2024 WL 3488305, at *6–7 (S.D.N.Y. July 19, 2024). But the district court determined that the

7

government had failed to supply sufficient "allegations demonstrating that Silva used the seized cellphone in connection with his criminal activities." *Id*. at *6. In addition, the district court ruled that law enforcement had not executed the search in good-faith reliance on the warrant.

The government timely appealed the district court's suppression order. Silva is detained pending trial, with the proceedings below stayed while we consider this appeal.

## STANDARD OF REVIEW

On appeal from a suppression decision, "we review the [district] court's factual findings for clear error" and its "legal determinations, including the existence of probable cause and the good faith of officers relying on a search warrant, de novo." *United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015). "[I]n the context of a warrant-based search, we accord substantial deference to the finding of an issuing judicial officer that probable cause exists, limiting our inquiry to whether the officer had a substantial basis for [the] determination." *United States v. Jones*, 43 F.4th 94, 109 (2d Cir. 2022) (alteration adopted) (internal quotation marks and citation omitted).

**DISCUSSION**

In this case, the Boyer Affidavit established a sufficient nexus between the criminal activities alleged and Silva's cell phone for a magistrate judge to conclude there was probable cause that the cell phone contained evidence of those activities. In any case, law enforcement officers executed the search in good-faith reliance on the warrant.

## I. The Exclusionary Rule and the Good-Faith Exception

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. In accordance with this constitutional right, "[c]ourts have . . . developed the 'exclusionary rule'—which requires trial courts to exclude unlawfully seized evidence from criminal trials—as the 'principal judicial remedy to deter Fourth Amendment violations.'" *United States v. McKenzie*, 13 F.4th 223, 231 n.5 (2d Cir. 2021) (quoting *Utah v. Strieff*, 579 U.S. 232, 237 (2016)).

However, "[a] determination that the warrant at issue was not supported by probable cause to search . . . does not automatically dictate the suppression of all physical evidence seized or statements derived therefrom," because "suppression is 'our last resort, not our first impulse.'" *United States v. Clark*, 638 F.3d 89, 99 (2d

9

Cir. 2011) (quoting *Herring v. United States*, 555 U.S. 135, 140 (2009)); *see also* *Herring*, 555 U.S. at 141 (explaining that "the exclusionary rule is not an individual right and applies only where it 'results in appreciable deterrence'" (alteration adopted) (quoting *United States v. Leon*, 468 U.S. 897, 909 (1984))).  Where the government obtained the evidence "in objectively reasonable," good-faith "reliance on a subsequently invalidated search warrant," we do not require its exclusion.  *See Leon*, 468 U.S. at 922.

## II.   Probable Cause Supported the Issuance of the Warrant

### A. The Boyer Affidavit Set Forth Probable Cause That Silva Engaged in Criminal Conduct

We begin with a preliminary issue.  The district court largely agreed that the warrant application set forth probable cause that Silva committed certain crimes that the Affidavit identified—with the exception of the financial scams alleged.  *See Silva*, 2024 WL 3488305, at *6–7.  We disagree that the Affidavit did not set forth probable cause for the commission of the financial crimes.

Boyer asserted, based on his conversations with a confidential informant, that Silva "engage[d] in a variety of financial scams to make money for the gang[,] including using credit cards linked to fake identities."  App'x 56–57.  In addition,

10

the Affidavit stated that at the time of Silva's arrest, he carried both a driver's license and a debit card bearing a name other than his own. *Id*. at 56–58.

We "require[] only," at this stage, "a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (citation omitted); *see also Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007) (explaining that probable cause "requires only such facts as make wrongdoing . . . probable"). The Affidavit, in relying on information from a confidential informant and evidence found on Silva's person at the time of his arrest, established the requisite probability that Silva engaged in financial crimes.

## B. The Boyer Affidavit Set Forth Probable Cause That Silva's Cell Phone Contained Evidence of the Alleged Crimes

An officer's affidavit in support of a warrant must "establish[] a sufficient nexus between the criminal activities alleged and [the place to be searched]." *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004). Importantly, "[a] showing of nexus does not require direct evidence and may be based on [a] reasonable inference from the facts presented based on common sense and experience." *Id*. (internal quotation marks and citation omitted).

Probable cause thus poses no "high bar." *Wesby*, 583 U.S. at 57 (citation omitted). At the warrant-application stage, the government need not prove its

case. *See Illinois v. Gates*, 462 U.S. 213, 235 (1983) ("Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place" in a probable-cause determination.); *accord United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993). A judicial officer need "simply . . . make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place" under a "totality-of-the-circumstances analysis." *Gates*, 462 U.S. at 238; *see also Walczyk*, 496 F.3d at 156 ("In assessing probabilities, a judicial officer must look to the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." (internal quotation marks and citation omitted)); *accord Florida v. Harris*, 568 U.S. 237, 244 (2013).

Two clarifications of law are in order. First, contrary to the district court's analysis, a search warrant does not require probable cause of the *use* of the property in furtherance of criminal conduct, so long as there is probable cause that the location to be searched contains relevant evidence of the criminal conduct. Second, a law-enforcement affiant's claim to expertise may support a probable-cause determination where it is combined with enough other specific, factual

12

allegations that tend to link the alleged criminal conduct to the place to be searched.  We discuss each issue in turn.

### 1. Use of a Cell Phone to Be Searched in Furtherance of Criminal Conduct Is Sufficient, But Not Necessary, to Establish the Requisite Nexus

The district court faulted the Boyer Affidavit for failing to establish probable cause that Silva "used" the cell phone in connection with his alleged criminal conduct.  *See, e.g.*, *Silva*, 2024 WL 3488305, at \*6 (referring to a lack of "factual allegations" or "witness accounts" "showing that Silva has used his phone" in the commission of the crimes or "used his phone to post gang-related material on social media").  Allegations tending to show that the target used his cell phone in furtherance of criminal conduct suffice to establish probable cause.  They are not, however, necessary.  We require only a "fair probability that contraband or evidence of a crime *will be found*" in the place to be searched.  *United States v. Lauria*, 70 F.4th 106, 128 (2d Cir. 2023) (emphasis added) (citation omitted); *see also Walczyk*, 496 F.3d at 157 (requiring "only such facts as make . . . the discovery of evidence . . . probable").

In Silva's case, the government was only required to establish probable cause that his cell phone contained relevant evidence of the alleged crimes.  Silva argues that the district court simply employed imprecise phrasing to describe the

government's burden before a magistrate judge.  The district court's opinion, however, is so replete with the erroneous "use" formulation that we cannot confirm that it held the government to the proper standard.[1]

### 2. Law Enforcement's Expertise, Combined with Case-Specific Factual Allegations, Established the Requisite Nexus in Silva's Case

The district court also improperly analyzed the role that a supporting affiant's expertise might play in establishing probable cause for a search.  A warrant application may establish the requisite nexus between the alleged crimes and the place to be searched based upon a "reasonable inference from the facts presented."  *See Singh*, 390 F.3d at 182 (internal quotation marks and citation omitted).  In several contexts, we have acknowledged the role that an officer's "experience" plays, along with "common sense," in the Fourth Amendment inquiry.  *Id*.

In *United States v. Riley*, for example, law enforcement officers found in the defendant drug trafficker's home a storage locker rental agreement—and, between

---

[1] *See, e.g.*, *Silva*, 2024 WL 3488305, at *6 ("But allegations demonstrating that it is likely that Silva communicated frequently with other alleged members of Dub City do not demonstrate that he *used* his cellphone to communicate with gang members." (emphasis added)); *id*. at *7 (indicating that a "one-sentence allegation does not provide a basis for this Court to make a probable cause finding that he engaged in fraud, much less that he *used* his phone to engage in fraud" (emphasis added)); *id*. at *8 ("Moreover, the Boyer Affidavit cites no evidence suggesting that Silva *used* his phone in connection with or to facilitate his flight." (emphasis added)).

his home and car, over 100 pounds of marijuana. *See* 906 F.2d 841, 845 (2d Cir.

1990). In that case, we held that a magistrate judge justifiably issued a warrant to

search the storage locker described in the rental agreement for additional

evidence. *Id.* In fact, we observed that, "[a]rmed with these facts *and knowing from*

*experience that dealers use such lockers* to store drugs pending distribution, the

[investigating] agents would have been remiss in their duties had they not sought

a warrant to search the storage locker." *Id.* (emphasis added); *see also id.* at 843

(crediting as "unsurprising" "the agent's . . . knowledge," stated within the

affidavit supporting the warrant application, "that drug traffickers often maintain

records of their transactions . . . and secrete drugs, drug proceeds, drug records,

and firearms at their . . . stash houses"). Further, and apropos of our discussion

above, pp. 13–14, "[t]he agents were under no obligation to establish that [the

defendant] had used the locker during the pendency of the marijuana transaction

that resulted in his arrest." *Id.* at 845.

Similarly, in *United States v. Benevento*, the government executed search

warrants for the defendants' homes. Its affidavits in support of the warrant

applications alleged facts concerning the Beneventos' involvement in an

international drug-trafficking conspiracy. *United States v. Benevento,* 836 F.2d 60,

70 (2d Cir. 1987), *abrogated on other grounds by, United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989) (en banc). "Included in the applications was the testimony of [a] DEA [a]gent . . . , who stated that, based upon his extensive experience in drug enforcement investigations, it was his opinion that drug traffickers, as the Beneventos were alleged to be, were likely to keep various items of evidence of drug-related activity including transactions records, large sums of currency, etc., in their personal homes." *Id.* Though we cautioned that the agent's "testimony, standing alone, might not be sufficient to establish a link between the Beneventos' current homes and their prior criminal activity," we held such statements sufficient to establish probable cause "when viewed together with the other evidence in the government's affidavits" linking the Beneventos' criminal activity to their homes. *Id.* at 71.

Finally, in *Singh*, law enforcement officers applied for a warrant to search the defendant's residence for evidence of a healthcare-fraud scheme. The affidavit attached to the warrant application relayed statements of an employee of Singh's medical practice indicating that the employee knew certain paperwork would be found in the defendant's residence, because the defendant's wife "worked on the business payables and payroll of the Practice at the . . . residence." *Singh*, 390 F.3d

16

at 180.  In that case, "[a]fter identifying the documents to be searched for and seized, [the] [s]pecial [a]gent [affiant] noted that, in her nine years of experience in working on health care fraud and drug-distribution cases," she "found that people frequently maintained financial and bank records at their homes or businesses and kept such records for a number of years."  *Id*. at 181.  We held that the information the employee-informant supplied, combined with the special agent's expert observations, properly established a nexus between the crime and the residence. *Id*. at 183.[2]

In each of the precedential cases above, the law-enforcement affiant pointed not only to personal expertise tending to bolster a claim of knowledge that evidence might be found in a particular location, but also to other particular, corroborating factual allegations linking the alleged crimes to the place to be searched.  So too here.  Along with Boyer's assertion of "familiar[ity] with the

---

[2] In another appeal raising an ineffective assistance of counsel claim, we considered counsel's failure to move to suppress certain evidence seized at the defendant's second apartment.  *See United States v. Cruz*, 785 F.2d 399, 405–06 (2d Cir. 1986).  In that case, an agent's affidavit both explained that the defendant was paying rent on and concealing evidence of his association with that apartment and alleged other facts supporting the inference that the defendant ran a drug-trafficking scheme.  The agent also attested that based on his experience, narcotic dealers "customarily" maintain apartments and other locations apart from their residence to store "drugs, paraphernalia, . . . money, or all three."  *Id*. at 405.  We explained that "a magistrate judge is entitled to credit such an expert opinion," notwithstanding the fact that the defendant "assert[ed] . . . [an] absence of any evidence that [he] or any of his associates ever utilized" the apartment. *Id*. at 405–06. Counsel therefore did not render ineffective assistance in neglecting to object to the admission of evidence ultimately obtained in the course of that search.  *Id*.

manner in which gang members and individuals engaged in violent crime use cell[]phones in connection with such activity," App'x 54 (Boyer Aff. ¶ 1), Boyer attested to Silva's alleged membership in Dub City's criminal enterprises, which crucially, included an alleged racketeering conspiracy, *id*. at 56 (Boyer Aff. ¶ 8). Indeed, even the district court acknowledged that the "alleged pattern of racketeering activity makes it likely that Silva would have communicated on countless occasions with other alleged members of the Dub City gang." *Silva*, 2024 WL 3488305, at *6. That Silva likely communicated with multiple other members of Dub City in the course of alleged conspiratorial conduct tends to support the inference that his cell phone contained evidence of that conduct. Boyer also noted that the schemes Silva purportedly ran involved "credit cards linked to fake identities," *id*. at 57 (Boyer Aff. ¶ 8), which might reasonably implicate the only electronic device found on his person at the time of his arrest.

We stress, however, the limitations of our holding. Silva argues that approving the search of his phone in this instance would "permit the indiscriminate search of cell phones in virtually any case where there is probable cause to believe a crime was committed." Appellee's Br. 1–2. However, *Riley v. California* requires a valid warrant before law enforcement may search a cell phone

18

that is seized incident to arrest, precisely because probable cause to arrest a suspect does not necessarily amount to probable cause to search his cell phone. [3] *See* 573 U.S. 373, 401–03 (2014).

The warrant here specified the information that law enforcement could access on Silva's cell phone. *See* App'x 49–51. The search parameters included addresses, logs and messages, social media contents, files with text, photos and videos, location, browser entries, and "any system, data or configuration information." *See id.* And these enumerated parameters were accompanied by the proviso that "law enforcement personnel may need to conduct a complete review of all [electronically stored information]" on the phone "[d]epending on the circumstances." *Id.* at 51.

In a different case, a defendant may argue that "the breadth of th[e] description" in a warrant of the places to be searched "outruns the probable cause supporting the warrant." *Clark*, 638 F.3d at 94. But Silva did not challenge the

---

[3] Nothing in this opinion contradicts Supreme Court precedent regarding when law enforcement must first obtain a warrant to conduct a search. *See, e.g.*, *Carpenter v. United States*, 585 U.S. 296, 320 (2018) (holding that the government must obtain a warrant before accessing seven days' worth of cell-site location information); *Riley*, 573 U.S. at 401 (explaining that "a warrant is generally required before . . . a search [of a cell phone], even when a cell phone is seized incident to arrest"). These cases describe the role cell phones play in modern life—and the commensurate need for the government to obtain a warrant in some instances prior to their search. But the focus of our inquiry is the probable-cause standard supporting a warrant application, not whether officers must obtain a warrant at all.

scope of the warrant; he argued only that the warrant failed to establish probable cause to search the cell phone altogether. And it matters that the alleged offenses here—gang violence, financial crimes, and flight from justice—can be evidenced and manifested electronically in many ways. The scope of the search (particularly as to Silva's social interactions) is therefore hard to cabin.

All told, "common sense and [Boyer's] experience" combine in this case to support a "reasonable inference," *Singh*, 390 F.3d at 182 (internal quotation marks and citation omitted), given the totality of the circumstances, that a search of Silva's cell phone might have with a "fair probability" yielded evidence of his participation in the alleged criminal conduct, *Gates*, 462 U.S. at 238. The Boyer Affidavit identified specific attributes of the alleged criminal conduct that tended to show the cell phone would contain evidence of that conduct. The magistrate judge possessed a "substantial basis" for her probable-cause determination. *Jones*, 43 F.4th at 109 (citation omitted).

## III. The Government Relied on the Warrant in Good Faith

The animating principle behind the good-faith exception is that the exclusionary rule aims to "deter police misconduct rather than to punish the errors of judges and magistrates." *Leon*, 468 U.S. at 916. A decision to suppress evidence thus always entails the careful weighing of the "benefits of deter[ring]" law-

20

enforcement misconduct against the "substantial social costs" that attend suppressing evidence, including the detrimental impact on the criminal-justice system's "truth-seeking" function. *Herring*, 555 U.S. at 141 (internal quotation marks and citation omitted). "Penalizing [an] officer for [a] magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Clark*, 638 F.3d at 99–100 (alteration omitted) (quoting *Leon*, 468 U.S. at 921). Consequently, "searches pursuant to a warrant will rarely require any deep inquiry into reasonableness" when assessing the officer's good faith. *Id*. at 100 (alteration omitted) (quoting *Illinois v. Gates*, 462 U.S. at 267 (White, J., concurring in the judgment)). Before the district court, the government bore the burden of demonstrating its good faith. *See United States v. George*, 975 F.2d 72, 77 (2d Cir. 1992).

The Supreme Court has identified four circumstances in which we do not accept that the government acted in good faith: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *See Clark*, 638 F.3d at 100

(citation omitted); *see also Leon*, 468 U.S. at 923. On appeal, Silva asserts that the third circumstance applies here. He contends that the Boyer Affidavit is so "bare bones" that the officers should have known that any warrant issued pursuant to it would not withstand Fourth Amendment scrutiny.

A bare-bones affidavit is "totally devoid of factual circumstances to support conclusory allegations." *Clark*, 638 F.3d at 103. Showing that a reasonably well-trained officer should have known that a warrant premised on a particular affidavit was illegally issued is "a very difficult threshold to meet." *Jones*, 43 F.4th at 112 (quoting *United States v. Falso*, 544 F.3d 110, 128 n.24 (2d Cir. 2008) (Sotomayor, *J.*)). "The concern" associated with bare-bones warrant applications "is particularly acute when facts indicate that the 'bare-bones description . . . was almost calculated to mislead.'" *Clark*, 638 F.3d at 103 (alteration in original) (quoting *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996)).

An affidavit is bare bones where, for example, the affiant states only that "he has cause to suspect and does believe that liquor illegally brought into the United States is located on certain premises"; or when the affiants assert only that they "have received reliable information from a credible person and believe that heroin is stored in a home." *See Gates*, 462 U.S. at 239 (internal quotation marks

22

omitted) (first quoting *Nathanson v. United States*, 290 U.S. 41, 44 (1933); then quoting *Aguilar v. Texas*, 378 U.S. 108, 109 (1964)). Where the affidavit contains more details, such as specific information from a confidential informant tending to show that the location to be searched is implicated in criminal activities, it is ordinarily not bare bones. *See, e.g.*, *Leon*, 468 U.S. at 925; *Clark*, 638 F.3d at 104; *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992).

The Boyer Affidavit set forth specific factual allegations concerning Silva's participation in Dub City based on information from a confidential informant. It discussed Boyer's review of court documents and his conversations with members of the U.S. Marshals Service regarding Silva's alleged commission of the August 2019 shooting and his subsequent failure to appear in state court on charges related to that crime. As noted extensively above, the Affidavit also properly linked Silva's cell phone to these activities. Finally, Silva does not suggest that the Affidavit's descriptions were in any way "calculated to mislead." *Clark*, 638 F.3d at 103 (quoting *Reilly*, 76 F.3d at 1280).

No aspect of the warrant application before us suggests that "'a reasonably well trained officer would have known that the search was illegal' in light of 'all of the circumstances.'" *Herring*, 555 U.S. at 145 (quoting *Leon*, 468 U.S. at 922 n.23);

23

*accord Clark*, 638 F.3d at 100. Without affirmative indicia of law-enforcement misconduct, we decline in this case to resort to "the extraordinary remedy of suppression." *See United States v. Ganias*, 824 F.3d 199, 221 (2d Cir. 2016) (en banc). The district court erred in failing to credit the searching officers' good-faith reliance on the warrant the magistrate judge issued.

## CONCLUSION

For the reasons described above, we VACATE the order of the district court and REMAND for further proceedings consistent with this opinion.